COMPTOGRAPH CO. v. UNIVERSAL ACCOUNTANT MACH. CO. et al.

(Circuit Court, N. D. Illinois, E. D. January 19, 1906.)

No. 27,090.

1. PATENTS—CONSTRUCTION OF CLAIMS.

If the wording of a claim of a patent is fairly capable of two constructions, one of which will sustain the claim and the other defeat it, that which will preserve the invention should be adopted.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 141, 241–248.]

2. SAME—VALIDITY AND INFRINGEMENT—COMPTOGRAPH.

The Felt patent, No. 628,176, for an improvement in computing machines of the class having side by side printing action designed to enable such machines to print more than one vertical column of figures on a sheet of paper was not anticipated and discloses a novel and patentable combination. Also held valid as against the defenses of prior use and abandonment and infringed.

3. SAME—PRIOR PUBLICATION.

A disclosure of an invention by publication is not sufficient to invalidate a patent therefor applied for more than two years thereafter, unless the description was so full and intelligible as to enable persons skilled in the art to which the invention relates to comprehend or make it without assistance from the patent.

4. SAME—PRIOR USE.

An inventor of a computing machine completed a model which he took to the government Census Bureau where it was used by clerks for a week in order to test its efficiency in census record tabulation. At the end of such time the inventor offered to build other machines, and sell the same to the bureau, but the offer was not accepted. Several years later he applied for and obtained a patent for the machine without substantial change either in mode of operation or results. He testified that the use of the model in the census office was entirely for experimental purposes. Held, that under the circumstances such use did not amount to a placing of the machine on the market, but merely to an exhibition of the model, which did not invalidate the subsequent patent under Rev. St. § 4886 [U. S. Comp. St. 1901, p. 3382].

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 95–104.]

5. SAME—ABANDONMENT.

Under the rule that on an issue of abandonment every reasonable doubt should be resolved in favor of the patent, a delay of eight years after an inventor had substantially completed his invention before he applied for a patent therefor will not be held an abandonment, which defeats the patent as against an infringer not shown to have sustained

such injury by the delay as to give him an equitable right to insist on such defense.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 108–112.]

6. SAME—SUIT FOR INFRINGEMENT—PARTIES.

It is not necessary for the owner of a patent when suing for its infringement to join his sole licensee as a complainant.

In Equity. On final hearing.

John W. Munday and Henry Love Clarke, for complainant.
Paul Bakewell and Frederick R. Cornwall, for defendant.

KOHLSAAT, Circuit Judge. On May 31, 1898, Dorr E. Felt filed his application for letters patent for a tabulating machine, and a patent therefor, No. 628,176 issued to him July 4, 1899. Complainant, the present owner of said patent by assignment, brings this suit to enjoin infringement of claims 1, 2, and 4 of said patent and for an accounting. Defendant's answer, as originally filed, denies infringement, and denies the validity of the claims in suit. By amendment to the answer there are set up the further defenses of public use; that the subject-matter of the claims was placed on sale more than two years prior to the application for the patent; that the invention was disclosed in a printed publication more than two years prior to the said application; that the invention was abandoned. The cause is before the court on final hearing.

The claims of said patent here under consideration are as follows:

"(1) The combination with the printing mechanism adapted to print two or more characters side by side, of a laterally-movable paper carriage devices for feeding the paper longitudinally mounted in said carriage, and automatic mechanism acting in any position of the carriage to actuate said feeding devices in the line-spacing movements, substantially as specified.

"(2) The combination with a series of type arranged to print side by side, devices for impressing the paper upon the type, a laterally-movable paper carriage adapted to position the paper for the different columns, feed rolls for moving the paper longitudinally past the type, and means for actuating said rolls, substantially as specified."

"(4) The tabulating machine having in combination a laterally-movable paper carriage, means for feeding the paper vertically in any position of the carriage, and mechanism for shifting the carriage laterally the width of a column space, substantially as specified."

The specification of the patent so far as the same needs to be recited reads:

"This invention relates to the construction of calculating machines adapted to both add numbers and to print and tabulate the numbers as they are added, together with the sums of the numbers. My endeavor therein has been to adapt such machines to use with paper in sheet or short length form as distinguished from roll or continuous-length paper; also, to permit the printing upon the paper of a plurality of columns or vertical rows of numbers by providing it with a laterally-shifting paper carriage and with mechanism adapted also to feed the paper vertically at each printing operation. The machine embodies the usual numeral-wheels and their operating devices—such, for instance, as those shown in Patent No. 568,021 granted to me September 22, 1896. The wheels are not shown in the drawings; but the setting keys are indicated at 2 2, the segment-levers for rotating the wheels at 3, the vibrating frame whereby the keys are attached to and enabled to regulate the operation of said levers at 4, the crank supporting said frame at 5, the

spring for lifting the vibrating frame at 6, the main cam at 7, wherefrom most of the operating parts of the machine derive power, and the pivot upon which the cam oscillates at 8.

All the parts above enumerated are either in my patent or in my pending application, Serial No. 679,461, filed May 2, 1898, and, as will be understood from the patent, they are adapted to enable the operator to preliminarily set the type side by side necessary to print any amount coming within the capacity of the machine, whether it embraces one figure or several figures.

The machine is provided with a paper carriage adapted to be moved laterally whenever it is desired to start the printing of a fresh vertical column or row of numbers."

The record discloses that computing machines capable of performing arithmetical operations and printing the same upon a narrow continuous roll of paper were old. The pioneer patent for such machine was granted to W. S. Burroughs, August 21, 1888, and was followed by a subsequent patent to Burroughs in 1890, and one to Felt, the assignor of the patent in suit, the same year. The purpose of the patent here involved, among other things, was to substitute for the fixed feed roll of the prior machine a laterally movable paper carriage and means for positioning the same for column printing, so that a number of columns of figures could be printed by the computing machine on a short wide sheet of paper instead of the continuous single column printing of the machine of the prior art, the change to be effected without in any way interfering with the computing mechanism of the machine. Or to express the change effected somewhat differently, by the means indicated in the patent, the listing computer was transformed into a tabulating computer.

The three claims which are directed substantially to the same device embrace the following elements: (1) Printing mechanism adapted to print two or more characters side by side. (2) A laterally movable paper carriage. (3) Devices for feeding the paper longitudinally mounted in the carriage. (4) Means for actuating the feed rolls, acting in any position of the carriage for line spacing. (5) Devices for impressing the paper upon the type. (6) Mechanism for shifting the carriage laterally the width of a column space.

Defendant does not seriously deny that if the said claims are valid, its machine is an infringement thereof, but insists that if said claims are construed broadly enough to read upon its device, then they are invalid in view of the prior art. Twenty-two patents are cited by defendant as showing the state of the art at the time of the application for the patent in suit. Of these, two, the Hiett patent of 1897 and the Pike patent of 1897, are within the statutory limit of two years of the filing of Felt's application. The remaining references divide themselves into two classes: (1) Devices having coincident printing action as the ordinary typewriter; and (2) devices having side by side printing action. It is unnecessary to analyze these various patents, for the record is most full in this respect, the experts called by the respective parties to the cause having detailed at length the features of the structures claimed therein. The point of divergence between the experts for the respective parties is not as to the construction of these prior art patents, but as to the interpretation of the claims in suit, in reaching their conclusions as to whether said patents are an-

ticipatory of the claims here presented. The claims are broadly worded, and considered apart from the specification and drawings, claim 4, at least, is probably broad enough to be read upon the ordinary typewriter construction. They should, however, be reasonably construed in the light of the specification and drawings, and when approached from this view point, the language of the claims lends itself to a description of the features claimed in the invention. If the wording of a claim is fairly capable of two constructions, one of which will sustain the claim and the other destroy it, that which will preserve the invention should be adopted. I have no hesitancy, therefore, in reaching the conclusion that those portions of claims 1 and 2 which call for mechanism or type adapted to print two or more characters side by side have reference not to the position of those characters after they are printed upon the paper, as contended by defendant, but refer to the printing action of the type. The claims then call for a structure embodying multiple type hammers capable of impressing upon the paper several characters in a horizontal line without a lateral shift of the paper during such printing operation. It was a computing machine of the class having side by side printing action that Felt sought to improve, and the result he sought to accomplish, as appears from the specification of his invention, was to enable such computing machine to print more than one vertical column of figures on a sheet of paper, to tabulate as distinguished from listing, the various amounts employed in the computing process. Without then discussing separately the several patents cited by defendant, it appears plainly that none of them shows the combination of the claims in suit, and none of them suggests, even remotely, the mode of arriving at the desired result. The paper carriage of the typewriter which moves a step laterally by spring escapement action upon each depression of a key, in order that a new surface of the paper may be brought to the printing point for an impression, lacks almost every element of the combination here presented. It is not contended that the prior patents on computing machines having side by side printing action show a transversely movable carriage, except possibly the German patent to Huber, which in addition to its being subsequent in point of time to Felt's invention and reduction to practice, is in my judgment shown on the record to be inoperative if constructed according to the patent, and of little weight as an anticipatory reference. Do claims 1, 2, and 4 cover a patentable combination, or is the device of the said claims but an aggregation of elements producing no new result? Defendant characterizes the invention as consisting in applying to an old and well-known form of adding machine, an old and well-known form of typewriter carriage, and insists that the result is merely an aggregation of old elements, each performing exactly the same function in the Felt device that it separately performed in previous relations, and that no new function or result is disclosed. But is this true? The tabulations of computations is a new result. The paper carriage of the combination here being considered does not operate in the manner disclosed in the prior typewriter art. In some respects its functions are radically different from those of

the earlier use. I am of the opinion that the claims call for a valid' combination within the meaning of that term as defined by the authorities, that said combination is novel and patentable, and that the claims must be sustained unless the invention disclosed therein has been relinquished to the public by reason of the facts disclosed in the record which are the basis of the several defenses set up in the amended answer.

It appears from the record, that Felt in 1890 completed a machine embodying the invention disclosed in said claims in suit. In February of that year, he took the machine to the Census Office in Washington where under arrangement with the Superintendent of Census, it was used in that office for the purpose of determining its efficiency in census record tabulation. Felt testifies that said model was used in the Census Office for a period not exceeding one week, and during that time it was operated by clerks in the Census Office. He further testifies that while said machine was being so used, he offered to build machines similar to the model for sale to the Census Bureau. No order for the building of such machines was given to Felt, nor did the Census Bureau indicate to him the reason for their failure to place an order. This as said above, was in February, 1890. Thereupon Felt went to work upon other features of the machine, which he testifies he considered necessary to perfect the machine before it was placed upon the market, which features are the subject-matter of claims of the Felt patent not here in issue. So far as the features of the machine embraced within claims 1, 2, and 4 are concerned, they were in nowise changed from the time of their reduction to practice, as disclosed in the model of 1890 to the time of the application for the patent in 1898. On January 12, 1890, there appeared in the Chicago Tribune an article concerning Felt's model, together with a sketch of the exterior of the machine, reciting in a general way the results accomplished by the comptograph and referring to the census test about to be made. The above facts, defendant insists, work a forfeiture of the patent, and moreover show an abandonment of the subject-matter of the invention. It seems clear that these facts do not sustain the defense of disclosure by publication within the meaning of section 4886 of the Revised Statutes [U. S. Comp. St. 1901, p. 3382]. It was said by the Supreme Court in the case of Cohn v. United States Corset Co., 93 U. S. 366, on page 370, 23 L. Ed. 907:

"It must be admitted that, unless the earlier printed and published description does exhibit the later patented invention in such a full and intelligible manner as to enable persons skilled in the art to which the invention is related to comprehend it without assistance from the patent, or to make it, or repeat the process claimed, it is insufficient to invalidate the patent."

And to the same effect are Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279.

It seems satisfactorily established that complainant's model of 1890 when produced before the Census Bureau covered all the issues involved in the claims in suit. To all intents and purposes for this proceeding, it was complete. All that he did toward perfecting it, was the addition of certain mechanical appliances not covered by claims 1, 2, and 4. This cannot be called perfecting the device. In fact

nothing has been done to change the 1890 machine either in opera-
tion or results. There is nothing in the record to justify complain-
ant's delay on that theory. If the production of the model and the
offer to manufacture working machines like it to the Census Bureau
amounted to a public use coming within the statutory defenses, then
clearly the patent cannot be sustained. It should be borne in mind
that Felt did not attempt to sell his device. He only offered to
reproduce it and sell the reproduction. That cannot be held to amount
to placing it upon the market. He simply exhibited his model.
Walker on Patents (4th Ed.) p. 88.

The character of the use of an invention, as to whether it was ex-
perimental or public, is often difficult to determine, and the line which
marks the end of legitimate experimental use and the beginning of
that public use of a device from which the law raises a presumption
of a surrender of the inventor's rights therein to the public, necessarily
cannot remain fixed, but must vary with the facts of each case. In
the case at bar, the alleged public use occurred more than 15 years
ago, and the testimony in regard thereto is that of Felt alone. It ap-
pears that the model machine of 1890 was made with the idea on
Felt's part of its adaptability to and use in census work, and it was
taken there and used, presumably in a public way. Felt was suf-
ficiently satisfied with his machine after a test thereof to offer to
build and sell similar machines to the Bureau. Why this offer was
not accepted, whether such failure was due to inherent defects in the
model exhibited in the judgment of the officials, or whether the price
asked was too high, is left to conjecture. The record is silent. Felt
claims the test was experimental and demonstrated to him vital short-
comings in the device, which had to be remedied before he had a
marketable machine. He is the only witness called as to the trans-
action. While his declaration to the effect the use of the device as
experimental would not avail if the record clearly disclosed a public
use thereof, yet the facts as here disclosed are entirely consistent with
such explanation, and the doubt should be resolved in patentee's favor.

There remains to be considered the one other defense, that, because
of his failure to apply for a patent until 1898, Felt must be held to
have abandoned his invention. It is true that there was no change
made, so far as concerns the features of the device covered by the
claims in suit, from the 1890 model. Meanwhile, but within two years
prior to the Felt application, and therefore not a bar to the Felt
patent, there were issued the Hiett and Pike patents, which show
computing machines with laterally movable paper carriages, under one
of which, the Hiett, defendant claims to operate. A court might
perhaps be justified in holding that Felt's delay of eight years in apply-
ing for a patent, almost two years after others had made practically
the same discovery, constituted laches, in a case where intervening
rights were of such a character that to hold otherwise would work
serious wrong. The record before the court discloses nothing of that
character. It appears that defendant had made no considerable out-
lays prior to the filing of complainant's application. Certainly no one
should be permitted to avail himself of that defense as against an

inventor under the facts hereof, without showing substantial injury. It does not even appear that defendant's patent is of value. As said by the court in the case of Crown Cork & Seal Co. v. Aluminum Co., 108 Fed. 850, 48 C. C. A. 77:

"The law does not favor forfeiture, and, it being a question of fact whether there has been abandonment, all reasonable doubts must be resolved in favor of the patent."

Upon the facts before the court, this defense must likewise be overruled. The bill may be dismissed as to Reuben E. Spangler, the sales agent in Chicago for the Universal Accountant Machine Company, joined as a defendant in this action. No showing has been made against him. It was not necessary to join the American Arithmometer Company, sole licensee under the Felt patent, as party complainant herein. Section 400 of Walker on Patents, to that effect, is not borne out by the authorities cited. In cases where the licensee has sought to maintain an action for infringement in his own name, the courts have held that the action must be brought in the name of the owner of the patent, or the owner of the patent must be joined in the suit. Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923. I know of no authority that requires that the owner of a patent must join his licensee as party complainant.

Complainant may prepare a decree in accordance herewith.