POPE MFG. CO. v. ARNOLD, SCHWINN & CO.

(Circuit Court of Appeals, Seventh Circuit. October 13, 1911.)

No. 1,742.

PATENTS (§ 328*)—INVENTION—BICYCLE.

The Smith patent, No. 392,973, for a pedal shaft bearing tube for bicycles built rigidly into and forming an integral part of the frame, is void for lack of invention in view of the prior art as shown in structures described in printed publications.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Suit in equity by the Pope Manufacturing Company against Arnold, Schwinn & Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 177 Fed. 419.

This cause comes here upon appeal from a decree dismissing a bill of complaint, in common form, alleging infringement of claims 1 and 6 of United States patent No. 392,973, granted to William E. Smith on November 13, 1888, on an application filed February 16, 1888, for improvements in bicycles.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William A. Redding, William B. Greeley, Albert M. Austin, Charles K. Offield, Henry S. Towle, Albert H. Graves, and James R. Offield, for appellant.

Philip C. Dyrenforth, John H. Lee, George A. Chritton, and Russell Wiles, for appellee.

Before GROSSCUP and BAKER, Circuit Judges, and CARPENTER, District Judge.

CARPENTER, District Judge. The claims alleged to be infringed read as follows:

"1. In a rear-driving front-steering bicycle, the frame or reach provided with the rigid transverse tube c, built rigidly into and forming an integral part of said frame, and adapted, substantially as described, to receive the pedal shaft."

"6. In a frame for bicycles and kindred machines, a transverse receiving · tube, c, provided with necks, $c^8$ and $c^9$, to receive the front and rear ends of the frame or reach."

These claims indicate that the invention involves a pedal shaft bearing tube, so constructed transversely with the reach or frame of the bicycle that the whole forms a single rigid and integral structure.

The defenses are: (1) That Smith was not the first inventor, and (2) that the patent is, in view of the prior art, invalid.

In the view which we take of the case it will be unnecessary to discuss the question of whether or not Smith was the first inventor.

The record contains a number of English trade publications of a commercially general circulation in the United States, which indicate that the device of the patent in question was made public in this country prior to the date of the invention.

Certain papers were published in 1887 showing the so-called "Rover" type of bicycle, the bottom bracket of which, although it depended somewhat below the frame, was rigid and integral; the tube, however, being cut away between the two end bearings. It was, as defendants' expert says, a mutilated tube.

Griffin's Year Book for 1887, illustrating "The Ranger Centaur Dwarf Safety Ranger," shows a bottom bracket in rigid connection with the reach, but having a tubular journal or transverse tube underneath the reach. The Centaur Cycle Company's catalogue for February 1, 1888, shows a cut of the "Ranger" with the statement:

"We produce in one solid steel forging the crank bearing bracket with connections for the bottom fork and main backbone."

The "Cyclist" of May 25, 1887, and the "Bicycling News" of February 4, 1888, illustrating the "Raleigh" bicycle, show a rear-driving, front-steering bicycle, with what appears clearly to be a tubular pedal shaft, centrally located between the reach and the rear forks of the machine. This pedal shaft is shown to have been brazed solidly on the bracket.

Sturmey's Handbook, a standard bicycle publication, of date July 20, 1887, described the "Raleigh" bicycle as having "the crank bracket constructed solid with the frame." Also, "solid crank bracket, impossible to work loose."

The cuts and descriptive matter in these publications show that certain safety bicycles were advertised as constructed mainly of tubing, with a centralized and rigidly built-in bottom bracket. Whether the tubular pedal shaft was completely inclosed does not appear.

Thus it seems that some months prior to Smith's application for the patent in suit, and which, by legal presumption, was a like period prior to his claimed invention, the standard bicycle publications of England, which had a trade circulation in this country, contained illustrations which, though from their very nature not showing specific details, are so plain as to leave no possible room for invention in the subject-matter of either the first or the sixth claim of the Smith patent.

The location of the bottom bracket with reference to the frame or reach, as shown in these publications, is identical with that shown in Fig. 1 of the Smith patent, save only that it cannot be said from the illustrations alone that the bottom bracket illustrated is a nonperforate tube. A bottom bracket, however, it is; and manifestly centralized and built into the reach or frame, so as to make an integral part of it.

The following cuts of the "Raleigh" bicycle, taken from standard bicycle trade publications, will serve as illustrations. The first appeared in the issue of the "Cyclist" under date of May 25, 1887; and the second in "Sturmey's Handbook" which was published on July 20, 1887.

The crank axle bracket appears to be disposed centrally between the lower rear forks and the lower front member of the diamond frame. The bracket is solid with the frame. The lower rear fork and the lower front frame member extend radially from the crank shaft bracket, so that the bracket may be said to be centralized between them, built to form, in effect, an integral part of the frame, and is described in the text of "Sturmey's Handbook" as "solid crank axle bracket, impossible to work loose." This bracket is also described as provided with ball-bearings for the crank axle, from which it follows necessarily that the bracket must have been, in part at least, tubular.

Sturmey's Handbook, as well as the other printed publications in the record, leave it uncertain whether the crank axle bearing there contemplated was in the form of a continuous imperforate tube or not, and the complainant insists that the patent in suit contemplates

an imperforate tubular crank shaft. Complainant's counsel at the hearing on this appeal admitted that a perforate tube would not infringe the Smith patent. We agree with the learned trial judge that:

"With these illustrations and descriptive matter of the 'Raleigh' bicycle before him, showing every detail of the claims in suit except whether or not there was a perforation or opening in the underside of the bracket, and with perforate and imperforate axle supports to choose from, it is the opinion of the court that any person skilled in the art could as certainly have produced a bicycle involving the subject-matter of the claim in suit as if he had the Smith patent before him. If he chose a perforate axle and found that it was objectionable, it is believed that, in view of the state of the art, the most ordinary mechanical skill would tell him to close the opening or adopt an old form of imperforate tube. With the state of the art in view, it is the opinion of the court that there was no patentable difference between the Smith bottom-bracket with a perforation on its underside, and a bracket of the same construction without a perforation."

Given a tubular frame and a "crank bracket constructed solid with the frame," and bearing in mind that strength and lightness were the most desirable features in the construction of the so-called "safety bicycle," and bearing in mind also that the pedal shaft involved the point of greatest strain, it would not require inventive genius to take the perforate crank bracket, constructed solid with the frame, and convert it into an imperforate and consequently stronger tubular bracket.

This case comes within the doctrine announced in Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33, and Cohn v. United States Corset Company, 93 U. S. 366, 23 L. Ed. 907.

In Cohn v. United States Corset Company, the court said:

"To defeat a party suing for an infringement it is sufficient to plead and prove that the thing patented to him had been patented or described in some printed publication prior to his supposed invention or discovery thereof."

In Seymour v. Osborne, it was held:

"Patented inventions cannot be superseded by the mere introduction of a foreign publication of the kind, though of prior date, unless the description and drawings contain and exhibit a substantial representation of the patented improvement, in such full, clear, and exact terms as to enable any person skilled in the art, or science to which it appertains, to make, construct, and practice, the invention to the same practical extent as they would be enabled to do if the information was derived from a prior patent. Mere vague and general representations will not support such a defense, as the knowledge supposed to be derived from the publications must be sufficient to enable those skilled in the art or science to understand the nature and operation of the invention, and to carry it into practical use."

A patent to be valid must exhibit invention beyond what was known to the world prior to the advent of the patentee. The patent here involved falls short of this standard.

The decree of the trial court is affirmed, with costs against the appellant.