**JACUZZI BROS., Inc. v. BERKELEY PUMP CO. et al.**

No. 12540.

United States Court of Appeals Ninth Circuit.

July 23, 1951.

Rehearing Denied Sept. 12, 1951.

Charles O. Bruce, Nathan G. Gray, Berkeley, Cal. (Edward Brosler, Berkeley, Cal., of counsel), for appellant.

Mellin, Hanscom & Hursh, Oscar A. Mellin, LeRoy Hanscom and Jack E. Hursh, San Francisco, Cal., for appellees.

Before STEPHENS and BONE, Circuit Judges, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

Appellants hold two United States patents (Nos. 2,424,285 and 2,344,958) and bring suit for infringement by structures manufactured by defendant. The defendant denied and asked for declaratory judgments of invalidity of both patents.

These patents describe multi-stage centrifugal pumps with low and high pressure discharge openings. Distinct pumping systems are outlined, embodying such pumps and injector assemblies as integral parts thereof. It is represented that these patents cover three pumping systems: Patent 2,424,285 is said to cover Systems A and B. System A unites an injector with a pump unit of the impeller type. The discovery claimed is that a discharge is obtained at low pressure from an intermediate stage of the pump without adversely affecting the rest of the system, which thus may deliver large volumes of water at low pressure. However, a control valve is still required. System B is also embodied in 2,424,285. This device involves a dual purpose pressure system which can smiultaneously supply high pressure low volume requirements of the household and low pressure high volume requirements of irrigation, and additionally

provide automatic pump starting from either discharge. System C is claimed in Patent 2,344,958. The discovery here is announced as the creation of an injector type system which is self balancing and inherently stable. It requires no control valve. It is contended to be an improvement from that shown in 2,424,285. The main discovery is said to be "in a pump system employing the injector principle if the injector were supplied from a stage of the pump unit other than those from which the service charge is taken and the flow of water to the injector were favored over flow to service, the pump unit will automatically meet changing requirements * * *," and the pump will not lose its prime.

A characteristic pump system, according to these claims, is divided into two portions, that of the well casing and the pump unit. That portion in the casing has a suction line leading up to the pump, and therein is installed an injector assembly consisting of a venturi tube which receives water both from the well and from a nozzle which is provided with a separate passage connected with the pump by a pressure line. The pump comprises a number of impeller stages disposed above one another for operation in series. Each stage is cased and has an impeller unit of the centrifugal type housed therein, all such units being affixed to a common impeller shaft and adapted to rotate therewith. By virtue of the rotation, a suction is created which assists to draw the water from the well. By the centrifugal force created in each impeller, water is discharged to the next in series, and the velocity of the impeller discharge is transmitted into higher pressure by virtue of guide elements. At an intermediate impeller stage, the water is positively divided, part passing out at low pressure for use, but sufficient volume is forced into the eye of the succeeding impeller. The highest impeller unit receives the output of the next lower in sufficient quantity to keep the operating unit of the injector submerged and, in cases where there is at this point a discharge to service, to keep the operating unit of the injector favored over discharge at all times. The water may be

here divided so that a portion goes into a discharge spout while the balance goes into the injector unit and thus assists in raising the pressure in the suction line. In another form, the high level discharge is lacking and all of the water from this stage goes into the injector unit. The patents in question provide one of the intermediate stages with a low pressure discharge spout so that the water is divided at this impeller stage between the discharge spout and the eye of the next impeller. Through these means, as above indicated, there may be a simultaneous discharge of water for use at the first or an intermediate stage in large volume at low pressure and a discharge in small volume at a high pressure, either partly to the injector system and partly for use or altogether into the injector system.

The Court found as to the accused devices:

"That the defendants' accused pumping system is a system which includes a multistage centrifugal pump with the impellers arranged in series on a vertical shaft. An injector assembly is connected to and is supplied from the high-pressure discharge of the last impeller stage of the centrifugal pump. A low-pressure discharge opening is tapped into the first stage so that there may be a simultaneous discharge of water to service or use from the first stage at one pressure and a discharge to the injector from the last stage at a higher pressure.

"In the defendants' accused pumping system the force of gravity accomplishes the division of water between the low-pressure discharge outlet and the next succeeding impeller by arrangement of the eye of the said impeller at an elevation lower than the low-pressure discharge opening so that such impeller eye is always submerged and is fully supplied before water can flow through the low-pressure discharge opening.

"That defendants' accused pumping system does not employ the means of the patents in suit of positively dividing the water between a discharge opening tapping an impeller stage and the eye of the succeeding impeller, but instead arranges the eye of the impeller to be fed at a lower elevation

than the discharge opening so that the force of gravity will keep the eye of the impeller submerged although water is discharging through the discharge opening, * * *."

The defendant claims that an accused pump may be described as a multi-stage centrifugal pump having a high pressure discharge from the last stage to the jet, whereby water under influence of the jet is supplied to suction of the centrifugal pump so that water passes through first stage of centrifugal pump, thence into surrounding chamber, whence a portion of the water then discharges at low pressure through low pressure discharge while the remainder passes through the last stage and discharges under high pressure solely to the jet and thus the system is inherently self-balancing in that subsequent stages are maintained submerged in water, flowing by gravity from a chamber into which first stage empties, before passing to low pressure discharge, and therefore no control valve is necessary.

In essence, the claim of defendants was that the accused pumps were developed logically from the prior devices which had been manufactured by them over a number of years and that no invention was involved.

The Court tried the issues and found that the devices accused did in fact accomplish the same results in the same manner and by precisely the same means as those constructed according to the teaching of the patents of plaintiffs. The minor variations were held to be immaterial. This finding of the Court is firmly founded and is not controverted. The Court further found that the teachings of the patents in suit resulted in constructions both novel and useful. There is support in the evidence for these findings, and these are therefore affirmed.

But this leaves open the vital question of whether there is invention.[1] The Trial Court found as a fact, based largely upon an incisive examination of the prior art, that the patents in suit were void for lack of invention. Although it is not expressly stated that this conclusion is based upon evidence establishing the thesis beyond a reasonable doubt, the Trial Court expressed no doubt. And the record shows that such conclusion was supported by substantial evidence. But it is contended that, since the Patent Office and the Trial Court disagreed, we should find the facts de novo. The assumption of such authority by the appellate court would be an usurpation. However, we examine the facts to determine whether the findings of the Trial Judge are clearly erroneous under Rule 52, Federal Rules of Civil Procedure, Title 28 U.S.C.A., and must be set aside.

If there is not firm adherence to such a rule, everything is cast adrift. The trial courts find the facts. If appellate courts exercise no self-restraint, then, after the primary facts are thus found, these same facts are found anew twice over, with varying results. Not only is there no finality, but the findings may change with shifting personnel or on subsequent hearings. Not only finality, but stability is lost.[2] All is confusion.

But further, a great many of the patents, which were brought to light in this lawsuit and considered by the Trial Court, had not been previously considered by the Patent Office.[3] Even one prior art reference, which has not been considered by the Patent Office, may overthrow the presumption of validity,[4] and, when the most pertinent art[5] has not been brought to the attention of the administrative body, the presumption is largely dissipated. Such is the case here.

The presumption of validity of administrative grant has been in recent years al-

1. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.

2. O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656, 657.

3. Veronesi, No. 139,161 (1913); Speck (German), No. 376,684; Sulzer, No. 704,- 144; Rateau, No. 730,842; Stepanoff, No. 2,248,312; Jacuzzi, No. 1,758,400.

4. Mettler v. Peabody Engineering Corp., 9 Cir., 77 F.2d 56, 58; McClintock v. Gleason, 9 Cir., 94 F.2d 115, 116; O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656.

5. France Manufacturing Co. v. Jefferson Electric Co., 6 Cir., 106 F.2d 605.

most reduced to nullity in patent cases. The justice of the abandonment of this doctrine might be claimed because some absurd results have been reached by administrative bodies.[6] However, no matter what defects there may be in administrative bodies or courts composed of experts, questions of fact should be settled in the trial tribunal, reversible only because of clear error.

Based upon these guiding considerations, the findings will be examined to discover whether they are subject to such defects.

The first point which comes to notice is that nowhere does appellant tell us of what the invention consists. If claimant cannot make a non-technical explanation of discovery, there is some indication that invention does not exist. There is, of course, technical justification for failure to state the invention in non-scientific terms if the claims of the patent clearly outline the invention, because, upon the claims, the patent stands or falls. But there is no adequate explanation in the record. This circumstance furnishes further foundation for these findings of lack of invention, since the broad and far-reaching claims set out in the patents fail to furnish specific definition required by the statute. So the Trial Court held. Therefore, declaratory judgments of invalidity were entered as prayed by defendants.

The Trial Court went to some lengths to find wherein lay the invention claimed. In the discussion of these findings, the pumping systems outlined by appellant in the briefs will be followed in order to attain clarity. In the system denominated "A", it is said certain claims picture a multiple discharge pump wherein each impeller stage feeds directly into the succeeding stage.

But the Trial Court found, and the evidence positively supports the finding that "such a feed is found in many prior multipressure centrifugal pumps." The appellees themselves had long prior to the applications for patent developed a system whereby the water passed from one impeller to the next. It is inherent in the claim of discovery for this system that the peculiar design, which resulted in a low pressure high volume discharge from an intermediate stage without adversely affecting the pump unit of the impeller type in its operation connected with an injector, resulted in a functional development previously unattained. But there were multi-stage pumps with dual or selective discharges which were old in the art. Consideration of those devices already in the public domain indicates that in the patents in suit there was at highest a movement of situs of the low pressure discharge from the suction line of an old pump to the second impeller stage or from one impeller stage to another. Some of the pumps marketed by appellant prior to the patents contained such features, which were therefore public property. It need not be demonstrated that such a change for the elimination of practical difficulties is within the competence of the skilled artizan and is not invention. Other claims place emphasis upon the attachment of the injector to a multiple discharge pump with control valves. But injectors had been attached to pumps in the prior art. The operation and function of an injector and of a control valve in connection with a pump was well known and understood. The mere adaptation of an injector and a control valve to operate with this particular pump were not invention. Here there was a simple aggregation of devices previously known.

**6.** In patents, the public interest is paramount. Haughey v. Lee, 151 U.S. 282, 285, 14 S.Ct. 331, 38 L.Ed. 162. Comment has heretofore been made in Myers v. Fruehauf, D.C., 90 F.Supp. 265, 268, upon the interesting circumstance that the Patent Office, which is the oldest administrative body, has currently lost the quality of sanctity which emanates from such tribunals. And so, perhaps by legislation, the National Labor Relations Board. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456; N.L.R.B. v. Pittsburgh Steamship Co., 340 U.S. 498, 71 S.Ct. 453. Cf. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535, 66 S.Ct. 687, 698, 90 L.Ed. 821: "It is not true, as the opinion stated, that ' * * * the courts must in a litigated case, be the arbiters of the paramount public interest'."

Claim 11 of 2,424,285, said by appellant also to be germane to System A, was found by the Trial Court to relate to a two-pump system. Further, the Trial Court found, and we now hold, that the two-pump system with two outlets at varying pressures and an injector was specifically exemplified in the prior art. It is our opinion that, for functional purposes in comparison of the systems of plaintiff with devices in the public domain, inclusion of two pumps or one pump is immaterial, since these are equivalent in such systems.

Claim 13 of 2,424,285 seems identical with those claims set out in patent 2,344,958, which do not specify that the discharge opening to service is valve-free and will be considered in that connection.

System B is claimed by the appellant to be exemplified by certain claims of 2,424,285. Here pressure tank and automatic switch were added to a multi-discharge centrifugal pump. Pressure tanks are old. Automatic switches are old. Multi-discharge centrifugal pumps are old. Although a certain novelty was attained by the aggregation of these old elements, no result was attained which could not have been accomplished by a mechanic who set out to make a combination of these elements. No functional change was discovered. Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 79, 80, 54 S. Ct. 586, 78 L.Ed. 1131.

Certain claims of Patent 2,344,958 are said to establish pumping system "C". These vary in detail only and were considered together by the Trial Court. Each of the claims describes a system in which the pump unit with its impellers in series is tapped at an early impeller stage to furnish a large flow of water at low pressure, while the water at a higher pressure is used to feed an injector assembly. Some of these claims specify that the discharge passage is valve-free, and others do not. As noted above, the chief claim for this is that the system is a balanced unit and the eye of the impeller of the final stage is so set that it is always covered with water and thus the pump does not lose prime. As the Trial Court pointed out, in gravity systems such as those accused, the eye of the impeller is automatically covered continuously with water. Also, it was noted that, in the early pump systems, the impeller which operated the injector was covered in exactly the same way. Further, it was found that all systems which are closed are in fact balanced and there could be no invention in working this out in relation to a dual pressure pump. It may be doubted also that a mechanical division of the water as against pressure is not equivalent to a control valve.

It is one of the claims of appellant that "the invention of Combination C pertains to an injector type which is self-balancing and consequently inherently stable," because the injector is "favored over flow to service." Actually, this inherent stability is obtained by mechanically dividing the water whereby a measured full supply is delivered to the last stage and the overage passes off through the low discharge pipe. If it were otherwise, a control valve would be required on the intermediate discharge to build up resistance sufficient to insure delivery of a full measure of water to the last pump stage. The method by which this is done is a distinctive feature of each of the pumps in suit. The combination might be patentable except for the fact that the essential function is the continuous operation in that the last stage is submerged to the point that the injector is never starved. This supply of water must be continuously furnished. But the activating process is always the force of gravity. The pumps of appellees do not divide the water in the same manner as those of appellant. However, the methods of division or control of the water is not an essential. The methods of the two different systems are equivalent in this regard. The submersion of the control valve of the injector in each instance was accomplished by gravity. There is no essential in the method of achieving the submersion, whether by favoring the output or because the water fills the upper levels of the pump and thereby keeps the outlet eye submerged.

In this connection, it must be recognized that, whether the impellers are in series or

in parallel, the function is reciprocal and equivalent. In the prior art, pumping systems were exemplified in which the force of gravity was used to keep the injector system in operation by keeping the eye of the impeller, which activated it, continuously covered.

The essential holding of the Trial Court was that the prior art in the public domain was such that appellants made no advance thereon. The Trial Court considered several prior patents in this connection. The point is made that the pleading was not sufficient to present any of these patents as anticipation. But, if there is no technical anticipation by the use of prior exemplifications, the result is the same, since this exposition of the prior art can always be looked to for the purpose of determining whether a claimed advance is invention. The opinion of the exceptionally able Trial Judge is replete with instances of the development of like and analogous devices. This review of the steps of the evolution of the accused devices by reference to other pumping systems in the public domain is convincing. Of course, a previous device cannot be reconstructed in the light of the patent in suit and then used as evidence of the prior art. But that is not what was done here. Cf. Tilghman v. Proctor, 102 U.S. 707, 711, 26 L.Ed. 279; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 444, 22 S.Ct. 698, 46 L.Ed. 968; Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721.

■ The appellant argues that the literature of the alleged anticipations, such as patents or publications, must bear adequate directions for construction of the devices sought to be invalidated. But, where the accused device could be made by a competent mechanic by following suggestions or use of portions of such documents exemplifying prior art, such a doctrine is inapplicable. Cf. Cohn v. United States Corset Co., 93 U.S. 366, 377, 23 L.Ed. 907; Eames v. Andrews, 122 U.S. 40, 66, 7 S.Ct. 1073, 30 L.Ed. 1064. Otherwise, this supposed rule would negative the use

of equivalents. Furthermore, an aggregation need not have been exemplified either in anticipation or in the prior art. A true combination which performed a new function necessarily must be found as a whole in a prior patent or publication in order to accomplish destruction of a grant of monopoly. Imhaeuser v. Buerk, 101 U.S. 647, 660, 25 L.Ed. 945; Adams v. Bellaire Stamping Co., 141 U.S. 539, 542, 12 S.Ct. 66, 35 L.Ed. 849.

■ Although the claims of a patent, in order to comply with the statute, must be specific and deal with a definite construction, there is no invention in the placing together of devices well known in the art, however novel and useful may be the results, unless a functional difference from all previously known constructions be achieved. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 550, 58 S.Ct. 662, 82 L.Ed. 1008.

■ Here it is specially found that multiple discharge centrifugal pumps, injector systems in combination with pumps, pumps with impellers in series instead of in parallel, combinations of motor and pressure operated switch and pressure tanks to automatically start a pump on the opening of a spigot, and the use of control valves to insure resistance, sufficient to supply water to the impeller for the motivation of the injector were all well known expedients in the prior art. These elements, when placed in aggregation, did not functionally operate differently than before. The pumps operated as pumps and the injector systems operated as injectors, and the force of gravity operated as usual. We decide that none of these changes resulted in a new functional mode of operation, a development different in essential character or an unforeseeable improvement not obvious to mechanics skilled in the art. The Trial Court found pertinent suggestions and constructions in the patents and publications of the prior art. True, certain of the findings were based entirely upon writings construed in the light of testimony given by experts. If the findings were based wholly on written documents without

expert interpretation, the Trial Judge must find the facts and it is not true that we are in as good a position to find the facts from the written documents as he was. Furthermore, the law does not commit that function to us, but solely the power to reverse if his findings be clearly erroneous. Rule 52, Federal Rules of Civil Procedure.

In all this, nothing has been decided but questions of fact, and there is nothing in the case to convince us definitely and firmly, or at all, that a mistake has been committed. The findings do not appear therefore to be clearly erroneous in any particular.

Affirmed.