# REPORTS OF CASES

### DECIDED IN

# THE COURT OF APPEALS

#### OF THE

# DISTRICT OF COLUMBIA.

## IN RE APPEAL OF SCHAEFFER.

### PATENTS, APPLICATIONS FOR; ANTICIPATION; SOLUBLE ALIZARIN COLORING MATTER.

1. The claims in an application for a patent for a composition of matter consisting of a compound of alizarin with an alkali, and claimed to form a new coloring matter, *held* to have been anticipated, and properly rejected by the Commissioner of Patents on the product described in Crookes' "Handbook of Dyeing and Calico Printing," London, 1874, pp. 242 to 263.

2. It is not necessary that a prior publication, to defeat a patent, should be so specific as to teach how to make the article, if the claim is for a new manufacture, and not for the process of making it. The requirement is, that the thing sought to be patented shall have been described, and not the necessary steps antecedent to its production.

No. 7. Patent Appeals. Submitted November 13, 1893.—Decided December 4, 1893.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

THE FACTS are sufficiently stated in the opinion.

*Mr. Charles L. Sturtevant* and *Mr. Elmer P. Howe* for the appellant:

1. The Commissioner erred in rejecting appellant's claims upon the reference in Crookes' Handbook, in that the reference does not disclose the new product discovered by the appellant, nor does it describe a process of making such a

product. As bearing on this appeal, this reference is pertinent only in so far as it refers to the borates of alkalies. The statement in Crookes is that " borates of the alkalies will dissolve alizarin, especially with the aid of heat, yielding reddish violet-colored solutions." This statement is true, and it is not in conflict with any statement or claim in appellant's specification.

The reference does not disclose any anticipation of appellant's discovery. It does not state that when alizarin is dissolved in the borate of an alkali (borax, for instance) the resulting product will be a new chemical compound, nor that it will be possessed of any new properties. If it had, it would have been untrue. If the directions given by Crookes are followed, and alizarin is added to a solution of borax and water, a portion of the alizarin will be dissolved, and the resulting solution will be of a reddish violet color; but no complete chemical union will have taken place such as occurs in the manufacture of appellant's product. If the solution described by Crookes be concentrated by evaporation, free alizarin, uncombined, will be precipitated, demonstrating that no complete chemical union has taken place. If the solution of appellant's product in water be evaporated, the result is, as stated in his specification, not ·free alizarin, but his new chemical compound, " boro-alizarate of the alkali," and it is demonstrated to be his new compound, because it possesses properties in dyeing which are not possessed by Crookes' solution.

A prior publication, in order to defeat a patent, must place the invention or discovery in the possession of the public as fully as if the art or instrument had been practically and publicly employed. Robinson on Patents, §330, and cases cited.

The question presented in this appeal is identical with that decided in *United Nickel Co.* v. *California Electrical Works*, 25 Fed. Rep., 475, 476. In that case a prior publication describing the experiments of one Dr. Boettger was relied on to defeat the novelty of Adams' improvements in nickel-

plating. The court said, " Whatever the truth may be with reference to Dr. Boettger's experiments and the work referred to, they seem to have been simply scientific experiments in the laboratory. . . That is as far as he went. He did not reduce it to a practical art."

The reference cited from Crookes' Handbook is not so particular and definite that from it alone, without experiment or the exertion of his own inventive skill, any person versed in the art to which it .appertains could make the product under consideration, and therefore it has no weight as an anticipation. *McMillin* v. *Rees,* 17 Off. Gaz. 1222.

That persons skilled in the art of making and using colors derived no benefit from this statement in Crookes' Handbook is also evidence that it does not describe appellant's product nor the method of making it. For, if they had dyeing to produce lakes would not be done with insoluble alizarin, as it has always been done, but the simpler and more effective process which can be performed by the use of appellant's coloring matter would have been used. *Tilghman* v. *Proctor,* 102 U. S. 707, 711; *Celluloid Mfg. Co.* v. *Chrolithion Co.,* 23 Fed. Rep. 397, 399; *United Nickel Co.* v. *California Co.,* 25 Fed. Rep. 475, 476.

As to the effect of a prior publication as an anticipation, see also, *Cohn* v. *U. S. Corset Co.,* 93 U. S. 366; *Downton* v. *Yeager Milling Co.,* 108 U. S. 466, 471; *Eames* v. *Andrews,* 122 U. S. 40, 66.

2. The Commissioner erred in rejecting appellant's claims upon the reference in Crookes' Handbook, in that the reference cited states as a fact that carbonates, phosphates, and other salts dissolve alizarin, a statement which, if true, does not anticipate appellant's discovery.

In view of what has been said in considering the second assignment of error, it is merely necessary to repeat that appellant's new product is a compound formed by the chemical union of alizarin, boron, oxygen, and a base. That this is a new substance is apparent from its peculiar properties, namely, its solubility and its action in the presence of a mordant in dyeing.

3. The Commissioner erred in rejecting appellant's claims upon the reference from Crookes' Handbook, in that the reference does not state the truth, for the reference states that the solution of alizarin in borates, phosphates, carbonates, &c., yields reddish violet-colored solutions, whereas in fact different-colored solutions are produced.

This inaccuracy destroys whatever weight the reference has in other respects. *Falsus in uno, falsus in omnibus.* It shows that the reference is a mere statement of the speculations of a chemist who had never tested the practicability of his suggestions or demonstrated the truth or value of his speculations. *Jensen v. Keasbey*, 24 Fed. Rep., 144. As a matter of fact, the reference cited from Crookes is an exact translation of a paragraph which appeared in the French treatise of one Schutzenberger published in Paris in 1868; and the inference is that Crookes published it without verifying the accuracy of the statements therein contained.

*Mr. Levin H. Campbell* for the Commissioner of Patents.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents refusing Henri N. F. Schaeffer a patent for a new coloring matter, which he claims to have discovered in a compound of alizarin with an alkali, that is of special value in the art of dyeing.

It seems that alizarin is a red coloring matter, of the character of the Turkish reds, and is extensively used as a dyestuff. It is the coloring principle of madder, and is extracted from madder root. It is also made from anthracene, which is one of the products of coal tar.

The name has its origin in the trade name—Alizari—applied to madder in the countries bordering on the Mediterranean Sea. Alizarin is not soluble in water, but has acid properties which cause it to unite with bases. A base, in chemistry, is defined to be a compound substance which unites with an acid to form a salt. An alkali is such a base.

The applicant in his specifications correctly asserts that when alizarin is "acted upon by the ordinary alkalies, as the hydrates, carbonates, etc., a salt is formed which is more or less soluble." Some of the salts resulting from the mixture of alizarin with the several alkalies are more readily soluble in water than others.

It seems that the ordinary and most desirable process for dyeing cloth, is to pass the fabric through a bath of the coloring solution and then through another bath, which is called a mordant, for the purpose of fixing the color. It is stated by appellant, and not denied, that the prevailing rule in dyeing with alizarin has been to mix it with caustic soda, thereby forming sodium alizarate, which is a very stable salt, that is to say, not readily soluble in water, and does not readily give up its alizarin in a bath of mordant. Hence it became necessary to reverse the familiar practice, and treat the fabric to the mordant first and then pass it through the aforesaid mixture, from which the dye-stuff is only absorbed by the mordant slowly and by degrees. This process is objectionable because it is slow and also because it does not produce the best results in color.

In his specification of his claim of discovery, appellant says: "By treatment of alizarin with a soluble borate, a definite soluble compound is produced which contains the alizarin in combination with both the boracic acid and the base, and thus forms the soluble salt of a compound acid radical, and from which soluble salt, the alizarin is easily separated and precipitated by contact with a mordant—a reaction which does not occur when alizarin in combination with an alkali (such as when combined with soda as alizarate of soda) is caused to act upon a mordant."

His preferred method for obtaining his compound, as stated, is to completely dry the commercial alizarin and mix, by trituration, one part, by weight, with two parts, by weight, of "a soluble borate, preferably common borax, or sodium borate." By the addition of boiling water a "perfect solution of the alizarin and borate is obtained," which is then

available for application to the fabric to be dyed. This solution may also be evaporated to dryness and the powder produced put in packages for sale, which can be dissolved in hot water for use as desired.

This product, which he calls boro-alizarate of the alkali, he claims to be so thoroughly soluble as to readily unite with the mordant to produce the desired colored lake.

The special advantages of the alleged discovery are set forth in the application as follows:

" By means of my improved soluble alizarin the ordinary processes for the production of lakes in dyeing with alizarin may be very considerably simplified and improved; for, by reason of the solubility of the alizarin product in water, the fibre may first be completely saturated with the coloring matter—that is, the soluble alizarin—and the required lake or color may then be produced within the fibre by the subsequent application of the necessary mordant, thus reversing the ordinary methods of dyeing with alizarin for the production of such lakes, which essentially consists in the application of the mordanting bodies, either in whole or in part, previous to the application of the alizarin.

" The colors or lakes produced by the combination of my improved soluble alizarin with a mordant are superior to the colors ordinarily produced from the combination of alizarin and a mordant, because the fibre or fabric, by reason of the solubility in water of my improved alizarin compound, is thereby completely saturated with or permeated by the coloring matter, and the lakes or colors formed by the combination of the coloring matter with the mordant are in consequence fixed on and within such fibres or fabric, while at the same time there is a great economy in the quantity of the coloring matter required to produce a certain shade or result.

" Owing to the complete saturation of the fibre or fabric, the colors or lakes produced possess a greater depth or solidity and consequently greater brilliancy than the ordinary colors or lakes produced by the present known methods of dyeing with alizarin."

The following are the claims set up by appellant upon the foregoing specifications:

" 1. As a new article of manufacture, the herein described soluble alizarin coloring matter, it consisting of a soluble salt of a compound acid radical composed of alizarin and boracic acid, and having the property of giving up or surrendering its alizarin in the presence of a mordant to form a color or lake free from the alkali of the soluble salt, whereby the ordinary method of dyeing with alizarin may be reversed and a practical color or lake equal to the color or lake made with insoluble alizarin may be produced, substantially as described.

" 2. As a new article of manufacture, the herein described soluble anhydrous alizarin coloring matter, it consisting of a soluble anhydrous salt of a compound acid radical composed of alizarin and boracic acid, and having the property of giving up or surrendering its alizarin in the presence of a mordant to form a color or lake free from the alkali of the soluble salt, whereby the ordinary method of dyeing with alizarin may be reversed and a practical color or lake equal to the color or lake made with insoluble alizarin may be produced, substantially as described."

The Commissioner rejected these claims and refused the patent under the rule prescribed in Sec. 4886, R. S., on the ground that this mixture of alizarin and borax, or boracic acid, was old, in that it had been described in a book entitled *A Practical Handbook of Dyeing and Calico Printing* by William Crookes, London, 1874, pp. 242 *et seq.*

It seems, however, that the Commissioner recognized the merits of the discovery as a new process of dyeing, and has issued a patent therefor.

The several assignments of error present the question, as stated by appellant, upon which the case necessarily turns: Has the appellant discovered a new product in view of the statement in Crookes' Handbook, referred to in the Commissioner's decision? If he has, the decision must be reversed.

It is not denied that Crookes' Handbook is a practical treatise of established authority. It is stated therein: " The carbonates, phosphates, pyro-phosphates, borates, silicates, oleates, and generally all the salts capable of turning red litmus paper blue, dissolve alizarin, especially with the aid of heat, yielding reddish-violet colored solutions."

Borax is a salt formed by boracic acid and soda. A mixture, then, of alizarin and borax consists of alizarin, boracic acid and soda, and produces a soluble salt of alizarin. But this, however, is a mixture of alizarin and a borate, which, with the aid of heat, as stated by Crookes, will yield a reddish-violet colored solution.

And here again attention may be called to the fact that, in his specifications, appellant states his preferred method of procuring his solution to be the mixture of alizarin and common borax, with the aid of heated water.

It is undoubtedly true that a prior publication, in order to defeat a claim for a patent, must exhibit the thing in such an intelligible manner as to enable persons skilled in the art to which the invention is related to comprehend it, or to repeat the process claimed, without assistance from the claims and specifications of the applicant. *Cohn* v. *U. S. Corset Co.*, 93 U. S., 366; *Downton* v. *Yeager Milling Co.*, 108 U. S., 466; *Eames* v. *Andrews*, 122 U. S., 40.

It remains, therefore, to be considered whether persons skilled in the art of dyeing and compounding dye-stuffs, could, by experiment based upon Crookes' statement, produce the solution or compound which is claimed by the appellant as his own invention and discovery. In this connection, it must be remembered that appellant's claim for a new invention does not consist in the method of rendering alizarin soluble in water, nor in the new process of dyeing, but exclusively in the mixture itself, of alizarin, boracic acid, and an alkali.

It is well settled that where the claim is for a new manufacture, and not for the process of making it, it is not required that the prior publication shall be so specific as to

teach how to make the article. The requirement is, that the thing sought to be patented shall have been described, and not the necessary steps antecedent to its production. *Cohn v. U. S. Corset Co.*, 93 U. S., 366.

The same doctrine is stated in a recent work on patent law, as follows: " This requirement relates only to the precise idea expressed in the invention. If, for example, this should be a manufacture, the method of producing it forms no part of the invention, and therefore need not be described." 1 Robinson on Patents, Sec. 330.

Crookes' Handbook was intended for use by those interested in dyeing and skilled in the art of compounding and applying dye-stuffs, and is presumed to be well known among them. From this publication, and the state of the art as then known, it will be readily seen that the following facts were known to dyers of cloth at the time of and before appellant's application was filed: 1. That alizarin is a red coloring matter obtained naturally from the madder root, and artificially from anthracene. 2. That it is soluble by the ordinary alkalies, as borates, etc. 3. That the product of the mixture of alizarin and an alkali is a salt, more or less soluble in water.

It was not necessary, as we have seen, that Crookes should have given a formula for each combination or mixture, and an exact description of each result. It is enough if he gave the idea, and this he seems clearly to have done; for any one skilled in the art, experimenting with the substances as named by him, would, by mixing alizarin with a borate—say common borax, as appellant has done—have produced the same compound which he claims as his own discovery.

We think it clear that the Commissioner was right in holding that the appellant had not discovered or invented a new article of manufacture, and his decision is therefore affirmed. It is ordered that the costs of this court be taxed against the appellant, and that the proceedings and decision herein shall be certified to the Commissioner of Patents.

*Affirmed.*