29 C.C.P.A.(Patents)

In re VON BRAMER et al.

Patent Appeals No. 4566.

Court of Customs and Patent Appeals.
April 27, 1942.

Newton M. Perrins and Daniel I. Mayne, both of Rochester, N. Y., for appellants.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals affirming that of the Primary Examiner denying patentability, in view of the prior art, of all of the claims, numbered 1 to 20, inclusive, in an application for a patent alleging new and useful improvements in "Treatment of Motor Fuels". The application is a division of a copending application Serial No. 96,-467, filed August 17, 1936.

Product claims 1, 4, 6, 7, 11, 13 and 20 are the claims before us, the other claims having been cancelled by appellants subsequently to the decision of the board.

Claims 1 and 4 are illustrative and read as follows:

"1. A motor fuel comprising hydrocarbons and normally tending to deteriorate containing, in an amount sufficient to substantially retard the deterioration, a N-(primary-alkyl)-aminophenol in which the primaryalkyl group contains at least five carbon atoms.

"2. A motor fuel comprising hydrocarbons and normally tending to deteriorate containing, in an amount sufficient to substantially retard the deterioration, a N-(n-primary-amyl)-p-aminophenol."

The references cited are: Wade (British), 350,438, June 5, 1931; Gutzeit, 2,074,-467, March 23, 1937; Atwell, 2,081,130, May 25, 1937; Wilson, 2,084,754, June 22, 1937; Rogers et al., 2,084,977, June 22, 1937; Clifford, 2,109,164, February 22, 1938.

The subject matter of the claimed invention relates to "the treatment of motor fuels comprising hydrocarbons, the treatment serving to retard or inhibit deterioration of the motor fuels" and is directed to a motor fuel such as "cracked" gasoline stabilized against deterioration by the addition of a N-(primaryalkyl)-aminophenol.

The deterioration in the motor fuel to be retarded or inhibited, according to the application, is "manifested by a loss in knock-rating, the formation of color or the formation of gummy or resinous products". The application states: " * * * This deterioration is undesirable since it is important to preserve the knock-rating of a motor fuel and the gummy or resinous material tends to deposit in the induction system of the carburetor and intake valves impairing or even preventing the operation of the motor. The formation of color impairs the marketing of the motor fuel."

The Wade (British) patent relates to improvements particularly in "cracked" hydrocarbon motor fuels which have a "tendency to form gum or resinification products on storage". The fuel is treated with a "substituted aminophenol" and as examples of the material employed in the treatment it sets out "para- and ortho-methyl-amino-phenol, dimethyl-amino-phenol, butyl, isopropyl and benzyl amino-phenols, dihydroxy-diphenyl-amine, and the like." The deterioration inhibiting properties of the substituted aminophenols are set out in

much detail in the patent and they are there stated to be very much more effective than the aminophenols.

The Gutzeit patent relates to the stabilizing of hydrocarbon oils "such as gasoline and naphtha, especially cracked gasoline," all of which often contain gum or gum forming constituents in harmful quantities. The hydrocarbon material is treated in the patent by the addition of small quantities of para amino phenolic or para diamino aryl compounds, which compounds the patentee states, when contained in a benzene ring, are powerful gum inhibitors.

The Atwell patent relates to "a process for inhibiting the formation of gums and semi-solid organic materials" in equipment such as gas meters, etc. The patent shows the use of several amino phenols and several substituted amino phenols among which latter are butyl aminophenol, amylaminophenol, 4-n-amylaminophenol, and 4-n-hexylaminophenol.

The Wilson patent is directed to the stabilization of motor fuels. It is stated in the specification that color deterioration and gum formation in motor fuels are known to be the result of oxidation. The patentee states that among other substances which he found to be effective in preventing gum formation is para-aminophenol. He further states that "aromatic compounds with two hydroxyl and/or amino groups in the ortho or para positions of the benzene ring will completely prevent oxidation * * *". The specification also shows that an alkyl or aryl group may be substituted for a hydrogen atom in these compounds and when the substitution has been made solubility is decreased in water and increased in oil. The patentee states that he can produce substituted phenolic or amino compounds used in his process from "the unsaturated hydrocarbons derived from the pryolysis [cracking] of oil or coal as the base or stock" and specifically sets out that aminophenol can be alkylated by heating under pressure with alcohol.

The Rogers et al. patent relates in particular to the treatment of cracked gasoline with ortho-, meta-, and para-butyl aminophenols as gum inhibitors and claims a motor fuel product "containing a small proportion of aminophenol wherein one amino hydrogen has been substituted by a butyl radical * * *".

The Clifford patent relates to the retarding of the ageing of deteriorable organic compositions among which is gasoline. In the treatment of gasoline the patentee states that by the use of certain antioxidants the formation of gums and gummy materials is prevented. Among a long list of antioxidants there is specified N-butyl-p-amino phenol, N-isobutyl p-amino phenol and N-isoamyl p-amino phenol. A method of preparing N-butyl p-amino phenol is set out in the specification as "reacting butyl amine and p-chlorophenol in an autoclave".

The Primary Examiner in his rejection of the claims said in his statement as follows: "Applicants also arbitrarily limit the claims to five carbon atom alkyls, but the invention as alleged is that any alkyl having four or more carbon atoms are suitable.

"The references cited; Clifford, Atwell, Gutzeit and Wilson teach alkyls as gasoline stabilizers readable upon applicants claims. These references are particularly applied of record and since applicant admits that his claims are readable thereon further application is not made here. Similarly Wade and Rogers, et al. teach butyl amino phenols (four carbon atom) which applicants claims now arbitrarily distinguish by reciting five carbon atom alkyls. But in view of the admitted equivalence of operation as well as the obvious use of the higher alkyls with this teaching these references are also relied on. In re Wietzel et al. [39 F.2d 669], 400 O.G. 463 [17 C.C.P.A., Patents, 1079]."

The Examiner also made a report, on an affidavit submitted on behalf of appellant subsequently to the rejection, the pertinent portion of which reads as follows:

"The affidavit is the same in substance and submitted for the same purpose as that in the copending application by one of the applicants, F. R. Bean Serial No. 175,078, filed November 17, 1937 and referred to by applicants.

"One of the issues raised by applicants is that even if the compounds claimed herein as gasoline anti-oxidants are shown by the art of record, such references are inoperative and therefore ineffective as prior art, because these compounds were not available to the patentees for the proposed use as anti-oxidants. To support this argument they file the present affidavit, which purports to repeat the disclosed

method of preparing a primary butyl p amino phenol of the Clifford patent 2,109,164 (page 3, lines 16-20, column 2) of record herein. The effect therefore of the affidavit is that F. R. Bean, affiant, could not prepare this compound by a certain detailed method which he considers to be suggested by Clifford for making this compound. This, disregarding other suggested methods by other patentees, such as Wilson and Gutzeit, is deemed by applicants adequate to establish that none of the N primary alkyl amino phenols claimed herein were available to the patentees despite their suggestion to use the same as gasoline gum inhibitors as claimed.

"The examiner held in the Bean application and which holding was affirmed by the Board of Appeals, that all the prior art need teach or suggest was that the compounds or their unpatentable equivalents were useful for the purpose claimed and that, 'Even if it were conceded that the patentee could not prepare this substance by his method, even if it were never available to the patentee or any one prior to the present application—in short even if the patentee only guessed that the N butyl p amino phenol would be a useful antioxidant—that, adequately published, is sufficient anticipation for the present claims, which only affirm the truth of such guess.' "

The Board of Appeals regarded the situation in this proceeding the same in respect to the practice and law as that involved in the copending application of Bean and found in the instant case that the prior art references disclose the treatment of gasoline with a series of organic compounds of the same or adjacent members as disclosed and claimed by appellants to inhibit the formation of gum. In its decision the board stated as follows:

"It is contended on behalf of applicants that the compounds named in the patents were not known as such at the time and that the patents give no proposed method of preparing the same and that accordingly the disclosure consists simply of a mere chemical name and that this is not believed a sufficient disclosure to constitute a valid reference.

"After careful consideration of the record including the showing of affidavits, we are not convinced of the sufficiency of applicants' contentions nor that we should, in effect, change our prior conclusions as expressed in the earlier [Bean] decision.

We must accordingly hold that the naming of the reagents by the citations even though they are complex organic compounds and disclosed no further than by the customary chemical nomenclature is sufficient anticipation. The chemical nomenclature is, in fact, sufficient to disclose the structure of compound in details. It is not believed relevant or necessary to determine possibility of preparing these compounds or degree of difficulty involved."

Appellants do not contend here, and they did not contend below, that the prior art does not suggest the use of their claimed N-primary alkyl aminophenols for use in motor fuels as a gum inhibitor. Their contention throughout the proceeding has been that the prior art discloses their claimed inhibitor containing five carbon atoms or more by nothing more than a chemical name for a then alleged unknown aminophenol; and that disclosure of such claimed compound in the prior art, no further than by the customary chemical nomenclature, is insufficient to anticipate appellants' claims. In other words they contend that their compound in which the primary alkyl group contains at least five carbon atoms is critical as to its carbon content.

In their application appellants emphasize throughout the efficacy of inhibiting aminophenol compounds containing four or more carbon atoms. As an instance of such emphasis we quote from the application as follows: "We have found the N-(primaryalkyl)-aminophenols in which the alkyl group contains at least four carbon atoms are generally superior to known motor fuel stabilizers in that the aforesaid N-primaryalkyl compounds are more soluble in motor fuels and show little or no tendency to precipitate from solutions in methanol or other alcohols at lower temperatures. This decreased tendency to precipitate from alcoholic solutions at lower temperatures permits our new stabilizers to be transported and added to motor fuels in the form of solutions without encountering difficulties because of temperature conditions. A 50% by weight solution of N-(n-primarybutyl)-p-aminophenol or of N-primaryamyl)p-aminophenols in a mixture of methanol (90%) and butanol (10%) shows no precipitate at—70° C. Likewise the aforesaid N-primaryalkyl compounds are generally superior to known stabilizers in that they are much more resistant to extraction by water

152

and/or alkalies from motor fuels and exhibit a greatly decreased tendency to impart or induce color and/or turbidity in motor fuels."

Evidently the limitation of carbon atoms in the appealed claims is merely arbitrary. It probably is true that the compound containing five carbon atoms is a better inhibitor than that containing four, but in view of what we have quoted from the application it seems to us that any difference between the former and latter compound is one of degree only. Therefore it appears to us that the said carbon atom content limitation of the involved claims does not of itself lend patentability to the claims.

We cannot agree with the argument of appellants that a chemical product can be described in but two ways (1) by reciting a sufficient number of its physical and chemical attributes as "melting point, boiling point, color, crystalline appearance, solubility, chemical reactivity, etc." or (2) "to recite a process which will unquestionably produce the substance." We are of opinion that this argument has been effectively disposed of by the examiner in one of his letters, in which he stated:

"Applicants' argument that a name without further description given to a substance fails to identify or classify it and therefore fails to add to the prior knowledge in any way, is often true. In the present instance a chemical compound is named by the Clifford patent, butyl amino phenol, which, while proposed to be used as a gasoline stabilizer as applicants would use it, is, according to applicants, merely a name and not a real anticipation of the very stabilizer substance applicants would use notwithstanding applicants name their stabilizer substance with the same words. This contention is predicated in the failure of applicants to prepare this N-buytl [N-butyl] amino phenol by a process described by the patentee.

"The fallacy in applicants' argument lies in the fact that the N-butyl amino phenol mentioned by the patentee is more than a mere name of an individual substance, otherwise unrecognized. This is a name according to a standard system of chemical nomenclature (Geneva system) whereby a chemically individual substance of definite chemical molecular structure is defined having generally predictable properties such as found for any similar N-alkyl amino phenol, and generally capable of synthesis by the recognized classical organic reactions. The use of a name falling within the standard chemical system by the patentee is no accident because all of the many compounds named in Clifford's disclosure are deliberately named from this standard chemical system.

"Thus it is apparent that Clifford proposes to use N-butyl amino phenol as a gasoline stabilizer and as such anticipates applicants' claims, and this is true whether Clifford never really prepared or tried this suggested stabilizer, or what he really used was something totally different, because the suggestion to use this substance as claimed is clear—even if the patentee was only guessing the effect is the same. (In re Wietzel et al. [39 F.2d 669], 400 O.G. 463 [17 C.C.P.A., Patents, 1079].)"

■ It is not necessary that a reference patent for a device or chemical compound disclose an operative process for producing the article or product. In re Marden et al., 48 F.2d 428, 18 C.C.P.A., Patents, 1119; In re Fink, 62 F.2d 103, 20 C.C.P.A., Patents, 716; Cohn v. United States Corset Co., 93 U.S. 366, 23 L.Ed. 907; In re Appeal of Schaeffer, 2 App.D.C. 1; In re Decker, 36 App.D.C. 104; General Electric Co. v. De Forest Radio Co. et al., D.C., 17 F.2d 90; One-Piece Bifocal Lens Co. v. Bisight Co. et al., D.C., 246 F. 450.

We can find no error in the decisions below and therefore the decision of the Board of Appeals is affirmed.

Affirmed.