34 C.C.P.A.(Patents)

### In re STOLL et al.
### Patent Appeal No. 5294.

Court of Customs and Patent Appeals.
April 22, 1947.

E. F. Wenderoth, of Washington, D. C. (A. Ponack, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 9, 10, 11, and 12 in appellants' application for a patent for certain alleged "new and useful improvements in Sympatheticolytically Active Dihydro-Derivatives of Lysergic Acid Amides and their Manufacture." No claims were allowed.

Claims 9 and 10 were rejected as unpatentable over the prior art of record and claims 11 and 12 were rejected as being drawn to nonelected species and, therefore, need not be considered here on their merits.

The references are: Wolf 2,073,954 March 16, 1937; Kharasch 2,086,559 July 13, 1937.

Claim 9, which is generic, is illustrative and reads as follows: "9. The new chrystalline dihydro-derivatives of sympatheticolytically active lysergic acid amides selected from the group consisting of ergotamine, ergotoxine, ergocristine, ergosine, ergotaminine, ergotinine, sensibamine, lysergic acid butanolamide, lysergic acid propandiolamide, lysergic acid p-hydroxyphenylethylamide, lysergic acid norephredide, lysergic acid amide of asymmetric diethylethylenediamine, lysergic acid diethylamide and lysergic acid anilide, which contain two hydrogen atoms more than the starting products, which give the Keller's and the Van Urk's color reaction, but the fluorescence in ultra-violet light of which has been decreased, which are less sensitive to light and to the air action than the starting products and which are no more transposable into the isomer series and which are without action on the uterus, but possess a pronounced action on the sympathicus, and the water-soluble salts of such derivatives."

Claim 10, drawn to the elected species, is specific to crystalline dihydro-ergotamine.

The ground upon which appellants rely to establish patentability of the rejected claims is summarized by counsel for appellants as follows: "Briefly stated, the invention is concerned with new derivatives of ergot alkaloids resulting from the addition onto the molecule of the latter of two hydrogen atoms. This addition of hydrogen is realized by a catalytic hydrogenation of the parent material under superatmospheric pressure and in a suitable solvent medium.

The new dihydro derivatives have desirable and, as compared with the known alkaloids, distinct pharmacological properties * * *."

The record discloses that in the prosecution of the application before the examiner, appellants relied not only upon the claims here involved drawn to the derivatives of ergot alkaloids, but also upon a group of claims drawn to a process for producing them. The examiner rejected both groups of claims as lacking invention over the cited references. On appeal to the board, appellants submitted an affidavit to prove that the disclosure of the patent to Kharasch is inoperative for hydrogenating ergotamine and ergotoxine. Before the appeal was heard, however, appellants withdrew the appeal with respect to all the claims drawn to process.

The patent to Wolf relates to a process for the production "of a new alkeloid from ergot" and discloses that of the group of solutions specified as suitable for use as a solvent medium, the alkaloid is soluble in dioxane from which the alkaloid crystallizes unchanged. In other words, the patentee excludes the use of solvents to which the alkaloid is sensitive, and specifies the selection of one that is inert to the alkaloid.

The patent to Kharasch relates to hydrogenated ergotocin and the process for producing it. Claim 1 of the patent is specific to hydrogenated ergotocin and claim 2 to dihydroergotocin. The patentee stated in his application that he had also hydrogenated ergotoxine and ergotamine by his process but did not in that application claim those particular compounds.

The ergotocin of the patentee is dissolved in a suitable solution inert toward ergtocin and toward the catalyst used. The resulting solution is then subjected to hydrogenation gas, in a closed system, desirably under pressure of from two or three centimeters of mercury to several atmospheres. "The hydrogenation is continued until one mole of hydrogen is taken up per mole of ergotocin; which introduces two atoms of hydrogen into the ergotocin molecule, probably by the saturation of a double bond, to produce dihydroergotocin."

The procedure defined by Example 1 of the patentee is applied to the production of ergotocin. It is noted that in producing the derivative according to Example 4 of the specification, the patentee points out that in carrying out the process one should be careful not to introduce more than one mol. of hydrogen per mol. of ergotocin because more hydrogen than that can be introduced. The product obtained by the patentee crystallizes when separated from the catalyst.

The question here in issue is whether or not the compounds defined by claims 9 and 10 are disclosed by the patent to Kharasch alone or in combination with the disclosure of the patent to Wolf. More specifically, the point upon which this case turns is whether or not the patent to Kharasch discloses dihydro-ergotoxine and dihydro-ergotamine as defined by the appealed claims.

Appellants contend that the only products actually disclosed by the patent to Kharasch are dihydro-ergotocin and its salts, and that dihydro-ergotoxine and dihydro-ergotamine are not disclosed by the bare statement in the specification that—"I have also hydrogenated ergotoxin and ergotamine by the procedures herein set forth."·

Appellants further contend that the concurring decisions of the Primary Examiner and the Board of Appeals, holding that the products defined by the rejected claims are inherently produced by the teachings of the cited references, were erroneous decisions, and that all possibility of a doubt on this score is dispelled by the affidavit submitted to the board which demonstrates that the products defined by the appealed claims are not produced when the process described by the patent to Kharasch is applied to appellants' starting materials.

The position taken by the examiner in his final rejection of the claims under consideration was that a person skilled in the art by following the teaching of the patent to Kharasch would obtain the hydro compound of ergot alkaloids defined by such claims.

The Board of Appeals in affirming the action of the examiner held that dihydroergotoxine or dihydro-ergotamine are disclosed or are obvious from the patent to Kharasch and that claims for those com-

pounds accordingly should not be granted. The members of the board stated also that they were not convinced that the compounds defined by the claims under consideration could not be made by an expert following the teaching of the cited art of which Wolf disclosed the use of dioxane as an inert and suitable solvent medium.

Dioxane is the solvent medium preferably used by appellants according to their specification.

With respect to the affidavit submitted by appellants, the board considered that the allegations set forth in the affidavit involved the process disclosed by the patent to Kharasch, and in view of appellants' cancellation of their process claims, the affidavit was rejected.

[1] The court agrees with the decision of the board which held that since the claims drawn to the process for producing appellants' products were withdrawn by appellants, the question presented by the involved affidavit had no bearing on appellants' claims drawn to the compounds. In re John W. Marden and Harvey C. Rentschler, 48 F.2d 428, 18 C.C.P.A., Patents, 1119; In re Fink, 62 F.2d 103, 20 C.C.P.A., Patents, 716; In re Von Bramer et al., 127 F.2d 149, 29 C.C.P.A., Patents, 1018.

Appellants do not challenge the long established doctrine that a chemical compound is anticipated by a description of the compound in the prior art. They contend that the doctrine should be restricted, however, to references which do in fact specifically and expressly describe the compound in question, and that the incidental and cursory reference to the hydrogenation of ergotoxine and ergotamine in the patent to Kharasch constitutes no disclosure whatsoever of the resultant products defined by the rejected claims.

There is a critical difference, as indicated by the authorities hereinbefore cited, between a disclosure which is sufficient to support the rejection of a claim for a composition of matter and a disclosure which is sufficient to support the allowance of a claim therefor.

■ A compound previously described by name in a printed publication such as an issued patent is a disclosure which is sufficient to support the rejection of a claim for that compound. Section 4886, R.S., U.S.C., title 35, sec. 31, 35 U.S.C.A. § 31.

The patent to Kharasch and the application here involved disclose that the patentee and the appellants have hydrogenated two materials described as ergotoxine and ergotamine. Those materials are described by the patentee and by the appellants not as the resultant products of their respective hydrogenations, but as the starting materials respectively employed by them.

Appellants have claimed the resultant products obtained by a described process of hydrogenation. The patentee, however, does not describe the resultant products obtained by him when he stated that he had also hydrogenated the same starting materials, for the reason that he was claiming a resultant product obtained by him from the hydrogenation of ergotocin, a different starting material.

The concurring decisions of the tribunals of the Patent Office are to the effect that by using the same starting materials and by following the same procedure employed by appellants, the patentee would have obtained the resulting products that are defined by the rejected claims.

■ The question here in issue involves a highly complex chemical compound and appellants have failed to convince the court that the concurring decisions of the tribunals of the Patent Office are manifestly wrong.

The decision of the Board of Appeals is accordingly affirmed.

Affirmed.