46 CCPA

**Application of Herbert C. MURRAY and Durey H. Peterson.**

**Patent Appeal No. 6422.**

United States Court of Customs and Patent Appeals.
June 30, 1959.

Charles M. Thomas, M. M. Weisman, Washington, D. C., George T. Johannesen, Kalamazoo, Mich., and Eugene O. Retter, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Arthur H. Behrens, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Acting Chief Judge, and RICH, MARTIN, and JOHNSON, retired, Associate Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–6 of appellants' application Serial No. 355,152, filed May 14, 1953 for Steroid Compounds.

All of the claims are directed to new chemical compounds, claim 2 reading:

"11$a$-Hydroxy-16,17-oxidoprogesterone."

Claims 3–6 are directed to the esters of this compound and claim 1 is a generic claim displaying the structural formula basic to all of the claimed compounds, wherein the radical "RO-" is shown as an 11-*alpha* substituent, the claim stating that "R is selected from the group consisting of hydrogen, toluenesulfonyloxy, and hydrocarbon carboxylic acid acyl radicals containing less than nine carbon atoms." Claim 3 is subgeneric to the acyloxy compounds included in claim 1.

The only reference in the record before us is:

"Julian et al. 2,686,181 patented Aug. 10, 1954 on an application filed Aug. 11, 1949."

This reference is, of course, relied on under 35 U.S.C. § 102(e) as its filing date in the United States antedates appellants' invention date, assumed to be their filing date, there being no issue here about dates.

The examiner and the board dealt separately with claims 1 and 2, on the one hand, and claims 3–6 on the other. We shall do likewise, dealing first with claims 1 and 2. For the ensuing discussion the significant aspect of the invention of these claims is that appellants seek a patent on an 11-*alpha*-hydroxy-16,17-oxidoprogesterone, *the only asserted novelty in this compound residing in its 11-hydroxy substituent,* the 16,17-oxidoprogesterone admittedly having been described in the literature prior to appellants' invention.

Appellants' specification, in describing how the claimed compounds are made, says that the starting material is 16,17-oxidoprogesterone and acknowledges this to be a known substance by reference to an article by Percy L. Julian et al. in the Journal of the American Chemical Society, *71,* 756 (1949). It then proceeds with a description of how this material is subjected to a *microbiological* oxidation in a medium containing a certain strain of fungus, resulting in production of the 11-*alpha*-hydroxy compound which is thereafter separated from the medium by extraction or chromatography. While appellants' process is not directly involved here, since the claims are all to products, we note at this point that the Julian et al. patent cited as a reference discloses no comparable process.

The following quotation from the board's opinion sets forth its understanding of the rejection:

"The appealed claims stand rejected as *lacking invention over* Julian et al., hereinafter referred to as Julian. Julian discloses the preparation of 16,17-oxidoprogesterone. In column 4 the patentee states that:

" 'Also compounds containing oxygenated groups at other positions in the molecule, such as 11 and 12 hydroxy and keto steroids, *may be treated* in the same manner as the particular compounds mentioned in the examples.'

"The stated position of the examiner is that *if* a compound containing an hydroxy group in the molecule at the 11 position were used in preparing the 16,17-oxidoprogesterone compound as is clearly within the scope of Julian's disclosure, an 11 hydroxy-16,17-oxidoprogesterone meeting the terms of appealed claim 1 would be produced." (Emphasis ours.)

This interpretation of the rejection would seem to indicate, in the use of the expression "lacking invention over Julian et al.," that Julian does not specifically disclose appellants' compounds, which is indeed the fact. However, the examiner and the board approach the rejection somewhat differently.

The examiner, though he also used the expression "lacking invention over" in his Examiner's Answer, said in his final rejection that in Julian "there is a clear teaching of 11 hydroxy 16,17 oxidoprogesterone. * * * Julian is considered equivalent to an anticipation." In the Answer the examiner also said, "The teaching of the 11-hydroxy-16,17-oxidoprogesterone is so clear that it is believed that In re Von Bramer [sic] 127 F.2d 149, 29 C.C.P.A. 1018 is applicable."

The board, in holding that the rejection was without reversible error, said:

"We believe that the Julian disclosure would fairly suggest the compounds of appealed claims 1 and 2 to those skilled in the art. This being the case, we do not consider it essential that the reference teach a method of preparing those compounds, In re Von Bramer, 127 F.2d 149, 29 C.C.P.A. 1018."

We thus see that the board substituted the notion of a fair suggestion for the examiner's insistence on a clear teaching. There may or may not be a significant difference between these two concepts as the board viewed the matter, but it seems to us that the board retreated somewhat from the examiner's position. In any case our own study of the record shows beyond question that Julian does not contain a specific disclosure of appellants' compounds; that the examiner's postulate of a clear teaching is predicated on Julian's suggestion that steroids containing 11 or 12 hydroxy or keto groups *may be treated* by the processes disclosed; and that the board's conclusion that there is in Julian a fair suggestion of appellants' compounds rests on the same passage in the patent. In due course we shall consider whether the rejection on this basis was proper but first we should like to comment on the case of In re Von Bramer, cited by both the examiner and the board and discussed at some length in the briefs.

■ In the Von Bramer case this court decided a very simple point, that when a reference clearly names an organic compound (N-butyl-p-amino phenol), according to a recognized system of chemical nomenclature, that compound is part of the prior art *though* not further identified by chemical characteristics and though no process for making it is disclosed.

The examiner felt that Julian's teaching of appellants' 11-hydroxy-16,17-oxidoprogesterone was so clear that the Von Bramer case was applicable. With this we cannot agree. Julian does not *name* the compound and this is shown by the examiner's own reasoning, according to which, in order to create this teaching, he combined the naming of another specific compound, disclosed as made from still other named compounds, with a broadening statement that some other unspecified steroids which *might*

contain 11-hydroxy groups could be put through similar processing.

Careful consideration of the board's opinion shows that it did not cite the Von Bramer case for the same reason as the examiner but rather in support of the proposition that a reference disclosing—or fairly suggesting—a compound need not teach a method of preparing it. (This latter point was not originated in the Von Bramer case, which cites no less than seven prior decisions in support of it.)

It is our opinion that we do not have before us an In re Von Bramer type of situation because the claimed compounds are not named in the reference. We think the board was of the same mind.

Before the board, the appellants filed a Request for Reconsideration. In denying it the board said that it did not deem it an extension of the Von Bramer doctrine to state "that the reference also suggests" the compound of the appealed claims. We take this to mean that it is not an "extension" of the alleged "doctrine" because the doctrine is not involved, and to this extent we would agree. But this brings us to a consideration of the true ground of the board's rejection if, as we assume, it is not based on In re Von Bramer.

In its opinion on reconsideration the board called attention to this court's opinion in In re Stoll, 161 F.2d 241, 242, 34 C.C.P.A. 1058, saying:

> "The Patent Office Tribunals, however, held that the particular dihydro compounds of Stoll et al, while not specifically mentioned in the reference patent were 'obvious' from the disclosure of that patent, and this view was sustained by the Court."

The basis on which that view was sustained was that both the reference patentee and the applicants disclosed the hydrogenation of ergotoxin and ergotamine. The patentee disclosed the process of hydrogenating another material, ergotocin, and said, "I have also hydrogenated ergotoxin and ergotamine by the procedures herein set forth." This court saw no significance in the patentee's failure to name the resulting products and said it agreed with the concurring opinions in the Patent Office that "by using the same starting materials and by following the same procedure employed by appellants, the patentee would have obtained the resulting products that are defined by the rejected claims." We note that there were specific starting materials subjected to specific processes and that they were the same in the reference as in the Stoll et al. application. The court refused to disturb the factual judgment of the Patent Office experts that the products would necessarily be the same.

We do not feel that the instant appeal presents an In re Stoll type of situation. We do not see, as the court did in that case, that it is here *obvious* what the resulting products would be if one pursued Julian's suggestion, contained in the customary broadening terminal paragraph of his specification, that one might treat, in the same manner as the compounds in his specific Examples, other "compounds containing oxygenated groups at other positions in the molecule, such as the 11 and 12 hydroxy and keto steroids." In the view of the Patent Office, this generalized statement is supposed to be, at least, a fair suggestion of 11 *alpha*-hydroxy-16,17-oxidoprogesterone, and the related claimed compounds, for the reason that the patent discloses 16,17-oxidoprogesterone as an end product. We disagree, but, before explaining why, we should like to explain the foundation on which we think a proper rejection must rest.

We have said before, for example in In re Stempel, 241 F.2d 755, 44 C.C.P.A. 820, that an applicant is entitled to a patent unless one of the prohibitory provisions of the statutes, now the Patent Act of 1952, Title 35 U.S.C., applies. What prohibition is relied on here? If the examiner were correct in his view that Julian contains a "clear teaching" of the invention, that would imply a technical "anticipation" or lack

of novelty under section 102, in this case paragraph (e) since the Julian patent issued after appellants filed. We have rejected the existence of such an anticipation, as we believe the Board also did in retreating to its "fair suggestion" position. In doing so we also ruled out applicability of In re Von Bramer, supra, which involved a clear anticipation by specific naming. In standing on its fair suggestion premise, the board cited in justification In re Stoll, supra, and spoke of what would be "obvious" from the disclosure of the principal reference in that case. The obviousness there involved, however, was the obviousness of the production of certain compounds in the process described applied to specific materials, even though there was a failure to mention the products by name. It was something more than a "fair suggestion." It was a concrete disclosure, clearly comprehensible to one skilled in the art.

It seems to us that when we come to deal with rejections based on the premise that a reference *suggests* something which it does not disclose, we should remember that the only statutory justification for it is 35 U.S.C. § 103, which was written for the precise purpose of covering the situation where a patent should not be granted "though the invention is not identically disclosed or described" in the prior art. And we should heed the provision of that section that it applies only when the claimed invention "would have been *obvious* at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." (Emphasis ours.) Absent a clear disclosure, i. e. an "anticipation," or some other special statutory prohibition, the rejection must stand or fall on the existence of obviousness as qualified in section 103. We therefore consider the "fair suggestion" rejection on that basis, though neither opinion below nor either brief in this court so much as mentioned this statute which is basic to the issue before us. We can attribute this, perhaps,

to habit developed during the many long years during which we had to get along without it. It is, nevertheless, now the law we must follow.

We can rephrase the issue which is decisive here. In view of the disclosure of Julian, would the compound 11 *alpha*-hydroxy-16,17-oxidoprogesterone have been obvious to those having ordinary skill in the steroid art at the time appellants invented it? We must approach the answer to the question without having recourse to the disclosure of appellants' application.

Since we are not steroid chemists we recognize our limitations in attempting to decide what would be obvious to that class. We have weighed against the contentions of the Patent Office representatives the uncertainties and the inconsistencies pointed out by appellants, and the scales seem definitely to tip in favor of the latter.

The most serious flaw in the Patent Office argument, it seems to us, is that it glosses over the fact that the general statement about using 11-hydroxy compounds, among several other possibilities, applies to *starting materials* and not to the 16,17-oxidoprogesterone *product* disclosed by Julian to which the general statement is so carefully wedded in such assertions as the following:

"Since the Julian patent *identifies* the 11-hydroxy-16,17-oxido-progesterone by a disclosure of the constituent radical (hydroxy) and by its point of attachment (11) to a basic structure separately shown, the Board's holding (R-28) that the reference contains a 'fair suggestion' of the compounds of claims 1 and 2 has reasonable basis. * * * The circumstance that *Julian's* 11-hydroxy-16,17-oxido-progesterone *is disclosed* by substituent reference rather than by formula or by one complete structural name makes this disclosure no less an anticipation of the 11-hydroxy compound of claims 1 and 2." (Patent Office brief, p. 4.) (Emphasis ours.)

This argument seems to assume what the Patent Office was under some duty to establish as a fact. Julian neither identifies nor discloses 11-hydroxy-16,17-oxidoprogesterone, and the same brief elsewhere admits that "No specific example of Julian expressly describes" its production and that there is in the patent "no explicit identification of a 11-*alpha*-hydroxy-16,17 oxido-progesterone."

As appellants have pointed out, the general statement relied on in no wise says that the 16,17-oxidoprogesterone can be provided with an 11-hydroxy substituent, either *alpha* or *beta*. It refers only to starting compounds, not products, and it says *they* may have groups "such as 11 *and 12* hydroxy *and keto*" (our emphasis) and considering that hydroxy may be either *alpha* or *beta* this is a multiple choice among six possible substituents. Then assuming that of the six one chooses the 11-*alpha*-hydroxy, the further assumption must be made—or one will not arrive at appellants' claimed compounds—that the substituent on the 11 position of the starting compound comes through the process intact and appears in the product. It is not even suggested in Julian that such a result was contemplated; all he said was that compounds with such groups as 11 or 12 hydroxy or keto "may be treated."

Appellants have pointed out to our satisfaction that in Julian's processes his compounds, before they reach the final stage, have a 3-hydroxy group which is oxidized to a keto group in the end. This being so, they ask why in the same process an 11-hydroxy group would not also be changed to a keto group, thus failing to arrive at appellants' compounds. The board appears to have suggested that one could protect an 11-hydroxy group against such a change but this seems to us to be getting altogether too far afield from the actual Julian disclosure and to be dwelling too much on how one might depart from Julian if one wished to arrive at applicants' invention. It may be noted that since Julian is the only refer-ence of record, there are no other references on which to base departures from Julian's disclosure.

Our conclusion is that claims 1 and 2 define patentable invention over Julian.

Claims 3–6 were rejected only on the basis that they are esters which are "equivalents" of the compounds of claims 1 and 2 and are unpatentable for the same reasons as claims 1 and 2. Since those reasons are not acceptable, the reversal of the rejection of claims 3–6 follows for the same reasons and it is unnecessary for us to consider whether the alleged equivalence was art-recognized. See In re Ruff, 256 F.2d 590, 45 C.C.P.A. 1037.

The decision of the Board of Appeals is reversed.

Reversed.