49 CCPA

**Application of Erling T. HJERMSTAD and Carl C. Kesler.**

**Patent Appeal No. 6814.**

United States Court of Customs and Patent Appeals.

July 11, 1962.

Dawson, Tilton, Fallon & Lungmus, Horace Dawson and Timothy L. Tilton, Chicago, Ill., for appellants.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals affirming the Primary Examiner's rejection of claims 1, 3, 7 and 8 in appellants' application[1] for "Starch Ether Derivatives," as unpatentable over

Kreimeier et al. 2,116,867 May 10, 1938.

Four claims directed to the method of making the derivatives were allowed by the examiner.

Claim 1 is representative and reads:

"1. A partially etherified starch in the physical form of dry unswollen, filterable starch granules characterized by being more susceptible to swelling in the presence of water and tending to gelatinize at lower temperatures than chemically unmodified, unswollen, granule starch of the same type, said partially etherified starch being characterized structurally as the reaction product of unswollen, granule starch with a monochlorine substituted organic etherifying agent reacting monofunctionally with starch and in which the chlorine atom is attached to a single bonded carbon atom in an aliphatic chain, said etherifying agent being free of hydroxyl and epoxy groups, and being further characterized by its filterability from water suspensions thereof."

Appellants' invention relates to granular, unswollen, filterable ethers of starch

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Serial No. 617,223, filed October 22, 1956, as a continuation-in-part of Serial No. 272,712, filed February 20, 1952, now U.S. Patent No. 2,773,057.

having the characteristics stated in claim 1. The ethers are obtained by reacting, in an aqueous alkaline medium, granules of water-insoluble, unswollen natural starch with a monochlorine substituted organic etherifying agent in the presence of a suitable gelatinization[2] inhibitor. The resultant product, which is nongelatinized and filterable, is further characterized "by lowered swelling temperatures, increased rate of granule dispersion of cooking, increased paste translucency and cohesiveness, decreased tendency of their cooked pastes to retrograde and form gels on cooling and ageing, and increased clarity and smoothness of films formed from their cooked pastes." The specification also states: "Desolvation or precipitation with alcohol is not required, since the product is not solvated or swollen to the degree that would allow precipitation with alcohols."

The Kreimeier et al. patent relates to ethers of starch obtained, as far as relevant here, by reacting insoluble, unmodified starch, in an aqueous alkaline medium, with an etherifying agent. Although dimethyl sulfate is used in all the examples as the etherifying agent, monochlorine substituted organic compounds are also disclosed for that purpose. The patent broadly discloses three types of etherified starches, as follows:

> "When alkylating starch to a low degree of alkylation, in accord with the invention, the manner and conditions of alkylation alter considerably the type of product resulting therefrom. For example, we have found that an adhesive type product, hereinafter designated as type I, which is very sticky and adherent, can be obtained by first gelatinizing the starch grains and then methylating with from 0.02 to 0.75 mol. of dimethyl sulfate per mol. of starch; by heating type I methyl starch to approximately 80°C. a much more adhesive product is made herein designated as type I–A; a paste, type II, methylated starch can be obtained by the methylation in the cold of a water suspension of ungelatinized starch grains with from 0.02 to 0.15 mol. of dimethyl sulfate per mol. of starch and subsequent to methylation, diluting and gelatinizing the starch; and an intermediate type III may be prepared by methylation of the ungelatinized starch grains at comparatively low temperatures and with from 0.15 to 0.75 mol. of dimethyl sulfate per mol. of starch."

Examples 2 and 3 show the preparation of types II and III, respectively. Both examples conclude by stating that the product may be used as produced or may be gelatinized by heating to 80°C. and then used. The patent further states:

> "The paste, type II, methyl starch may be separated from the products of the reaction by simple settling and decantation; the intermediate, type III, can be fairly well purified by dilution with methanol to precipitate the methyl starch, decanting, again diluting with methanol, and drying the powder resulting from the last precipitation."

The examiner was of the opinion that Example 3 of Kreimeier clearly suggests that an ungelatinized starch ether is produced since the example concludes by stating that the type III product may be *used as produced or gelatinized* at about 80°C.

Appellants filed an affidavit showing that when Example 3 of Kreimeier was followed, a non-filterable, "viscous, creamy, white, opaque, fluid paste having adhesive characteristics" was ob-

2. It appears from the specification that gelatinization is a hydration or swelling of the starch occurring in an aqueous solution above 65°C. The specification also states:

"* * * If starch granules once become swollen or gelatinized it is impossible to reverse the action and obtain the original cold-water insoluble granule state. It is very difficult and costly to purify and dry starch which is in the swollen or gelatinized state. Such starch binds water too tenaciously to allow dewatering in commercial filters. * * *"

tained prior to heating to 80°C., and that heating "resulted in fairly complete gelatinization of the granules as evidenced by the formation of a viscous, very sticky, glue-like solution having a high degree of translucency." The affidavit further states:

> "* * * This is in no way inconsistent with Kreimeier's statement that the product may be gelatinized by heating to 80°C. The term 'gelatinization' literally means to convert to a jelly or jelly-like substance. Partial swelling of starch granules generally does not result in the formation of a translucent or clear jelly, but it does result in nonfilterability, adhesive properties, and precipitability by aliphatic alcohols. Suspension of a swollen starch having a low degree of etherification still requires heating to an elevated temperature to form a jelly-like, translucent glue."

The affidavit further stated that the procedure of Example 3, using sodium monochloracetate as the etherifying agent, resulted in "a very sticky, viscous, white opaque paste. It could not be de-watered in a suction filter. * * * On heating to 80°C. it formed an extremely viscous, translucent, glue-like mass."

The examiner's position regarding the affidavit is as follows:

> "* * * No issue is taken with the fact that the second affidavit, filed Jan. 8, 1960, does show that a *gelatinized* product is formed when Example III of Kreimeier et al is followed while employing *sodium monochloracetate.* However, the affidavit does *not* show that an *ungelatinized* product cannot be obtained from this example, when *methyl chloride* is employed as the etherifying reagent. This factor appears significant as such a reagent is unquestionably disclosed by patentees but was not employed by affiant. In any case, even if the ungelatinized product cannot be obtained, the claimed products would not be deemed patentable as it is considered that the reference clearly suggests the claimed products. See In re Von Bramer et al, 1942 C.D. 462, [29 CCPA 1018, 127 F.2d 149, 53 USPQ 345]."

He concluded that "The claimed product is deemed to differ at best in degree and not in kind from that of the reference."

The board did not think the Von Bramer decision applicable, noting in that case the compound was clearly named while in Kreimeier there is no explicit statement that the ethers are unswollen and filterable. However, the board affirmed the examiner stating: "The showing relative to the properties of the type III starch ether of Kreimeier et al. * * is not, in our opinion, determinative of the issue raised since we find that the disclosure as to the type II product shows it to be filterable, at least to some extent."

The disclosure referred to by the board is the following statement in the Kreimeier patent:

> "The paste, type II, methyl starch may be separated from the products of the reaction by simple *settling* and *decantation;* * * *." (Emphasis supplied.)

In that connection, the board stated:

> "We consider that the disclosure that the type II product can be separated from other reaction products by simple settling and decantation teaches that this product is to a large extent filterable, which appellants have stressed as an important property of their product. * * *".

The board's decision appears to rest basically on the theory that a material which undergoes "settling and decantation" is "filterable, at least to some extent." While there may be situations in which that is true, we do not think Kreimeier provides sufficient support for that conclusion here. The patent is entitled "Glue, Adhesive, and the Like," and clearly states that a *paste* separates from "the products of the reaction by simple settling and decantation." The

patent further advises that the "paste" is useful as a "dispersing agent, thickening agent, dressing or size for paper or textiles, sticker for insecticide, etc." Nowhere in the reference do we find any teaching of filterability. The fact that a paste separates from other components in a reaction mixture in such a manner that the other materials may be decanted or poured off does not necessarily mean that the paste is filterable. Rather, in our opinion, the entire tenor of the patent relates to materials such as glues and adhesives which are disclosed as "sticky" rather than filterable materials.

Since the board did not expressly reverse the examiner's position that the claims were unpatentable over Type III of Kreimeier, we shall also consider that rejection. First the examiner contended that Example 3 suggested an ungelatinized starch since the example concluded that the product "may be used as produced *or* * * * *gelatinized* * *." In our opinion the affidavit adequately answers that contention without the need for additional comment.

After the affidavit was filed the examiner admitted that the claimed product was not obtained when Example 3 of Kreimeier was modified by using a monochlorine substituted organic etherifying agent, such as sodium monochloracetate. He contended, however, that appellants should also show that when using methyl chloride, appellants' preferred etherifying agent, in Example 3 of Kreimeier, the desired result would not be produced. Aside from the teaching found in appellants' own specification, we find nothing in Kreimeier which would suggest that methyl chloride would product results which differed in any way from those in the affidavit, and the examiner suggests nothing.

Under such circumstances we are obliged to reverse the decision appealed from.

Reversed.

MARTIN, Judge, did not sit or participate because of illness.