# HUNTER DOUGLAS CORP. v. LANDO PRODUCTS, Inc.

No. 30024.

United States District Court
N. D. California, S. D.

Feb. 1, 1952.

636

Sherman & Peters and Donovan O. Peters, all of San Francisco, Cal., and Pennie, Edmonds, Morton, Barrows & Taylor, and Daniel V. Mahoney and Merton S. Neill, of New York City, for plaintiff.

Flehr & Swain, John F. Swain, and Julian Caplan, all of San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

This is a patent infringement action in which the defendant has set up the defenses of invalidity of the patent and non-infringement and, in addition, has counterclaimed for damages for alleged misuse of the patent through tie-in sales in violation of the Sherman Anti-trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and the Clayton Act, 15 U.S. C.A. § 12 et seq.

Both parties manufacture thin metal strip of the type used for venetian blind slats. It appears from the record that such strip is made from steel or a hard aluminum alloy, the latter being the most in demand, and that this material is furnished to the manufacturers in large sheets considerably thicker than the finished product. This necessitates shearing into strips of the desired width and then passing such strips through a rolling mill in order to reduce the thickness. As the rolling proceeds the material work hardens and the minute edge irregularities caused by the shearing tend to develop into cracks that make the finished strip unusable until such edge cracks have been removed. This was usually done by trimming which resulted in the waste of some material. To meet this problem plaintiff's assignors tried removing the edge irregularities caused by the shearing before the strip was rolled and found that this resulted in a finished product that required no further edge treatment.

Application for letters patent covering this process and the apparatus used for carrying it out was filed on December 17, 1946. All the claims were eventually rejected on the basis of prior art patents and an appeal was taken. The Board of Patent Appeals sustained the rejection of claims covering the apparatus but allowed two claims covering the process. United States Letters Patent No. 2,503,824, embodying these two claims, issued on April 11, 1950, to Joseph L. and Edwin J. Hunter and Thomas Martin, plaintiff's assignors. Claim 1 is as follows: "The method of producing a thin strip of metal having a thickness which is a small fraction of its width and having smooth edges requiring no metal-finishing operation which comprises starting with a strip of material of approximately the desired finished width but of substantial thickness, removing from the marginal edges of the starting strip any irregularities extending transversely across said edges by making a shaving cut along said marginal edges by a cutting action which proceeds longitudinally along the edges of said strip; and then rolling said starting strip in a series of rolling steps to effect a substantial reduction in the thickness of the strip to a small fraction of the original starting strip thickness."

The second claim differs from the first only in the provision for interposing between two of the initial rolling steps a second shaving step to remove any edge irregularities which escape removal in the first shaving operation.

Defendant removes incipient edge cracks by trimmers placed after the first rolling stand instead of in front of it. It is defendant's contention that this method does not infringe the patent, because once the material has entered the rolling stand it is no longer the "starting strip" called for by the patent claims, and that, in any event, the method claimed by the patent is anticipated by the prior art and prior public use. Thus the basic question is the validity of the patent.

The individual steps of trimming and rolling are admittedly old in the art, as are the mechanical devices used in their execution. The Board of Patent Appeals found invention in the combination of the steps, holding that such combination was not disclosed in the prior art and produced a result highly beneficial and not obvious. In reaching this decision, however, the Board did not have the benefit of certain prior art patents and evidence as to prior public use which were introduced at the trial before this court. A patent is presumptively valid but, as stated by the Court of Appeals for the Ninth Circuit in Jacuzzi Bros., Inc., v. Berkeley Pump Co., 191 F.2d 632, 634, "Even one prior art reference, which has not been considered by the Patent Office, may overthrow the presumption of validity, and, when the most pertinent art has not been brought to the attention of the administrative body, the presumption is largely dissipated."

Forrester Patent No. 222,483, issued in 1879, and Webster Patent No. 670,352, issued in 1901, neither of which was considered by the Patent Office, were introduced in evidence. Each discloses a method of edge trimming by knives mounted on the apparatus, followed by rolling. The fact that plaintiff may have developed trimmers and rolling stands of an improved design is not pertinent since the *method* only is covered by the claims in suit.

Further evidence that this combination of trimming and rolling steps was in use long prior to the application for the patent in suit appears from the testimony of the witness MacQuarrie, founder and retired president of the California Cold Rolled Steel Corporation and a man with some 44 years

years experience in the metal rolling field. Mr. MacQuarrie testified that his company, founded in 1939, specialized in rolling material to meet special customer requirements; that this material had to have a finished edge unless it was going to stamping companies; that to get such an edge, the roughness caused by the shearing operation had to be cleared up in some fashion; and that unless this were done "it would not leave a good edge *either for an edge in rolling* or for a finished strip." (Emphasis the court's.) He further testified that in 1939 he devised a machine with two cutting tools, one on each side, and both adjustable, which went immediately in front of each of their small mills. The metal strip was fed out of the coil box and through the cutting device, which took a shaving off each edge, before entering the rolling mill for a reducing pass. It was also his testimony that taking a subsequent pass on the second small mill set up in tandem with the first was part of the general practice in the mill; that this had been followed since 1939; and that additional passes were taken if required for the amount of reduction necessary.

Mr. MacQuarrie further testified that the mill was open to the public and to prospective customers with its operation in plain view, that they had many visitors, and that Joseph Hunter visited the plant in 1939 or 1940 and subsequently in 1945, or thereabouts.

Mr. MacQuarrie was a credible witness. His testimony was supported by the introduction in evidence of the cutting tools themselves and photographs showing the method in use in the mill operation. The Court finds that this meets the test of "clear and convincing evidence" required to prove prior public use.

In view of the foregoing, the Court concludes that the patent in suit is invalid for want of invention over the prior art. Even if an opposite conclusion were reached, plaintiff has failed to show infringement. The method claimed by the patent required removal of irregularities from the edges of the *starting strip*. (Emphasis the court's.) Defendant does no edge trimming until the strip has passed

**638**

through one rolling stand, when it is no longer the "starting strip". Plaintiff cannot enlarge the scope of the patent as granted by the Patent Office by seeking to go beyond the bounds of its claims.

Defendant's counterclaim for damages must likewise fail. It proceeds on the theory that plaintiff, the sole manufacturer of plastic tape for venetian blinds, tied in the sale of the tape with sale of slat material; that because of the popularity of the plastic tape, which defendant could not supply, many of its customers transferred their slat orders to the plaintiff; and that the defendant was thereby damaged. Assuming that such alleged tie-in sales were clearly proved, which they were not, and that the defendant lost customers thereby, there is no showing that the defendant's plant could have handled additional orders. Indeed the record discloses that during the year 1950, the period in question, the defendant's mill was operating at close to capacity with a greater volume of metal strip produced and a larger number of employees than in 1949. To support an action for damages for anti-trust violation, the private litigant must establish the fact that he has been damaged. This the defendant has failed to do.

It is therefore ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of the defendant on the complaint and in favor of the plaintiff on the counterclaim and that the respective parties pay their own costs.